SHUMAN, by guardian, Respondent, vs. SHUMAN, Appellant.

*September 28 — October 25, 1892.*

*Husband and wife: Paternity of child: Evidence.*

1. The rules of evidence by which it is to be determined whether a child is or is not the lawful issue of the marriage of the mother and her first husband, are not affected by the second marriage of the mother before the birth of the child.
2. The question being whether one I. was the father of a child begotten while the mother was his wife and while they were living in the same house with opportunities for sexual intercourse, no statements or admissions of the mother or I. were admissible to show nonintercourse; and the complaint and testimony of I. in his undefended action for divorce against the mother on the ground that for two years she had refused to have sexual intercourse with him, were properly excluded, although the divorce had been granted thereon.

APPEAL from the Circuit Court for *Rock* County.

In April, 1888, Lelia M. Shuman died intestate, leaving surviving her the appellant, *Alexander Shuman,* her husband, and *Frances M.* and Sarah M. Shuman, her children and only heirs at law. The intestate died seised of certain real estate in Rock county. Her estate was administered in the Rock county court, and such real estate was assigned to her said children by the court, but subject to the right

of her husband, *Alexander Shuman*, as tenant thereof by the curtesy during his life.   An appeal was duly taken to the circuit court from the order or judgment of the county court thus assigning and distributing the estate.   For a history of this appeal, see *Shuman v. Hurd*, 79 Wis. 654. In August, 1890, Sarah M. Shuman, the younger of the two children of the intestate, died at the age of three years, and her estate was settled in the county court.   See *Shuman v. Shuman*, 80 Wis. 479.   On the hearing of the appeal in the circuit court, it appeared, and the court found, that on April 20, 1880, Mrs. Shuman, then Lelia M. Hurd, intermarried with one Andrew Ingle; that on November 15, 1884, the parties to such marriage were divorced by the judgment of the circuit court of Rock county; that such action for a divorce was commenced by the husband, October 3, 1884; that on February 10, 1885, the said Lelia M. Ingle intermarried with *Alexander Shuman;* and that her daughter, *Frances M. Shuman*, was born July 8, 1885. Thus far the facts are uncontroverted.

The circuit court also found the following facts: " That the said child, *Frances M.*, was so born at the expiration of the full, natural, and ordinary period of gestation, and that said child when so born was a fully developed and mature child; that during the months of September, October, and November down to the 15th day, 1884, said Andrew Ingle and Lelia M., his then wife, lived, boarded, and lodged in the same house; that at all times during the three months prior to the judgment of divorce entered on said 15th day of November, 1884, said Andrew Ingle and his then wife, Lelia M., had access to each other; that the appellant, *Frances M.*, is the lawful, legitimate issue and child of the marriage which existed between Andrew Ingle and Lelia M. Ingle; and that appellant, said *Frances M.*, is the lawful, legitimate child and daughter of said Andrew Ingle and his then wife, Lelia M. Ingle."

The circuit court refused to allow the complaint and the testimony of Mr. Ingle in the divorce action (which was substantially all the testimony in that case) to be read in evidence. Mrs. Ingle did not defend the action. Had the above testimony been received, it would have appeared by the complaint that the cause assigned for a divorce was desertion, in that for nearly two years then last past Mrs. Ingle had refused to have sexual intercourse with her husband, and asserted that she would not cohabit with him or allow him the privileges of a husband in the future. The testimony of Mr. Ingle substantiated the allegations of the complaint in the particulars aforesaid. The court also rejected certain letters written by Mrs. Shuman to her last husband, after the birth of *Frances M.*, in which she speaks of the child as the daughter of *Mr. Shuman.*

The circuit court gave judgment reversing that portion of the judgment or order of the county court which gives *Mr. Shuman* a life estate in the lands of which Mrs. Shuman died seised, as tenant thereof by the curtesy.. *Mr. Shuman* appeals to this court from the judgment of reversal.

*William Smith* and *C. E. Pierce*, for the appellant, contended, *inter alia*, that by the judgment of divorce in the action of Andrew Ingle against Lelia M. Ingle it became a verity as between the parties thereto that Ingle and his wife had not lived or cohabited together as husband and wife for more than a year immediately preceding the date of that judgment. The same estoppel that would affect Lelia M. Ingle (Shuman), if she were living, as to that judgment, should have like effect upon *Frances M. Shuman*, who is now claiming under her as her heir. *Perry v. Meddowcroft,* 10 Beav. 122; 2 Bishop, Mar., D. & S. sec. 1584; *Shelton v. Barbour,* 2 Wash. (Va.), 82; *Ennis v. Smith,* 14 How. 400. The presumption of access may be overcome by evidence of feelings and conduct of the parties. *Goss v. Froman,* 89

Ky. 318; *Wright v. Hicks*, 56 Am. Dec. 454, 455; *Wood-ward v. Blue*, 107 N. C. 407; *Bell v. Bumstead*, 14 N. Y. Supp. 753; *Caujolle v. Ferrie*, 26 Barb. 177; *Watts v. Owens*, 62 Wis. 519.

*John Winans* and *E. M. Hyzer*, for the respondent.

LYON, C. J. Sec. 2180, R. S., is as follows: "The husband on the death of his wife shall hold the lands of which she died seised, and which were not disposed of by her last will and testament, for his life, as tenant thereof by the curtesy: provided, that if the wife, at her death, shall leave issue by any former husband, to whom the estate might descend, such issue shall take the same, discharged from the right of the surviving husband to hold the same as tenant by the curtesy." Hence, if *Frances M. Shuman* is the issue of the marriage of Andrew Ingle and Lelia M. Ingle, afterwards Shuman (as the circuit court found her to be), the appellant, *Alexander Shuman*, is not entitled to curtesy in those lands of which Mrs. Shuman died seised, which descended to *Frances M.* On the other hand, if Andrew Ingle is not the father of *Frances M.*, the presumption probably is that she is the daughter of *Alexander Shuman*, who, in that event, is entitled to curtesy in the lands which she inherits from her mother.

The rules of evidence by which it must be determined whether *Frances M.* is or is not the lawful issue of the marriage of her mother and Andrew Ingle are unaffected by the fact that she was born after the marriage of her mother and *Alexander Shuman*. The last marriage may save *Frances M.* from being a bastard in case Andrew Ingle is not her father; but the same proof is required to demonstrate that he is not her father as would be required had the last marriage not taken place, and were she claiming as heir of Ingle.

Before proceeding to the consideration of those rules, the

first controverted finding of fact should be disposed of. Such finding is as follows: "That the said child, *Frances M.*, was so born [that is, on July 8, 1885] at the expiration of the full, natural, and ordinary period of gestation, and that said child, when so born, was a fully developed and mature child." It will serve no useful purpose to state the testimony on which this finding is based. The finding is well supported by the testimony of the physician who attended Mrs. Shuman when she gave birth to the child. The testimony which it is claimed tends to show that the child was prematurely born is of a most uncertain and unsatisfactory character. We think the testimony greatly preponderates in support of the finding, and it is unnecessary to invoke the rule that the finding will not be overthrown unless there is a clear and satisfactory preponderance of evidence against it.

The usual and ordinary period of gestation is about 280 days. 2 Greenl. Ev. § 152. Andrew Ingle and Lelia M., his wife, were divorced November 15, 1885, which was but 235 days before *Frances M.* was born. It becomes a verity in the case, therefore, that *Frances M.* was begotten while her mother was the wife of Andrew Ingle.

The old common-law rule in such cases was that the child of a married woman was conclusively presumed to be legitimate, if begotten while her husband was within the four seas,— that is, within the jurisdiction of the king of England,— unless the husband was impotent. 1 Bish. Mar. & Div. § 546. This rigorous rule has been considerably modified by judicial decisions in later times. We find the modern rule (concerning which there is little or no controversy) well stated by Lord LANGDALE, M. R., in *Hargrave v. Hargrave*, 9 Beav. 552, as follows:

"A child born of a married woman is, in the first instance, presumed to be legitimate. The presumption thus established by law is not to be rebutted by circumstances

which only create doubt and suspicion, but it may be wholly removed by proper and sufficient evidence, showing that the husband was (1) incompetent; (2) entirely absent, so as to have no intercourse or communication of any kind with the mother; (3) entirely absent at the period during which the child must, in the course of nature, have been begotten; or (4) only present under such circumstances as afford clear and satisfactory proof that there was no sexual intercourse. Such evidence as this puts an end to the question, and establishes the illegitimacy of the child of a married woman.

"It is, however, very difficult to conclude against the legitimacy, in cases where there is no disability and where some society or communication is continued between husband and wife during the time in question, so as to have afforded opportunities of sexual intercourse; and in cases where such opportunities have occurred, and in which any one of two or more men may have been the father, whatever probabilities may exist, no evidence can be admitted to show that any man other than the husband may have been, or probably was, the father of the wife's child. Throughout the investigation the presumption in favor of the legitimacy is to have its weight and influence, and the evidence against it ought, as it has been justly said, to be strong, distinct, satisfactory, and conclusive."

The circuit court found that during the three months next preceding November 15, 1884 (the date of the divorce judgment), Andrew Ingle and his then wife, Lelia M., lived, boarded, and lodged in the same house, and during all that time had access to each other,— meaning, no doubt, opportunity for sexual intercourse. Does the evidence sustain this finding? The court rejected as inadmissible all testimony of the statements or admissions of Andrew and Lelia M. Ingle tending to show that they had no sexual intercourse with each other during the time within which it is possible that *Frances M.* was begotten. The ruling

was correct. No rule of evidence is better settled than that husband and wife are alike incompetent witnesses to prove the fact of non-access while they lived together. 1 Greenl. Ev. § 28; 2 id. § 151; 1 Bish. Mar. & Div. (6th ed.), §§ 447, 547, and cases cited in those authorities; 3 Ency. Brit. tit. "BASTARD." See, also, 2 Am. & Eng. Ency. of Law, 149, and cases cited in note 3; *Mink v. State*, 60 Wis. 583; *Watts v. Owens*, 62 Wis. 512. Most of the rulings of the court rejecting testimony offered to prove non-access of Andrew Ingle to his wife about the time *Frances M.* must have been begotten, and before and after that time, which are assigned as error, are in strict accord with the above rule.

It is clear that the complaint and the testimony of Andrew Ingle in his undefended action for a divorce, were properly excluded as evidence of non-access. These are nothing more than sworn statements of the husband, and their character is not changed by the fact that they were made in the course of a judicial proceeding which resulted in the divorce judgment. Such judgment was admissible and was admitted to show the *status* of the parties to the action, that is, that they ceased to be husband and wife on November 15, 1884, but not to prove that a child begotten during the coverture is a bastard, or would have been such but for the subsequent intermarriage of her mother with *Alexander Shuman.* The letters of Lelia M. to her last husband were properly ruled out for the same reason; that is, they were mere admissions of the wife of the paternity of *Frances M.*

The testimony satisfactorily, if not conclusively, shows that Andrew Ingle and his then wife, Lelia M., for several months before, and down to the date of, the divorce judgment, resided constantly in the same house; conversed with each other; ate at the same table; lodged in adjoining rooms, with a door between them; and had, during all that

time, ample opportunity for sexual intercourse, if they chose to indulge therein.   Thus the findings of the learned circuit judge in respect to those circumstances are fully sustained by the proofs, and the inference therefrom is conclusive that Andrew Ingle is the father of the child *Frances. M.*

Some other errors are assigned upon the rulings of the court on objections to the admission of testimony, but none or all of these rulings are regarded as sufficient, even though erroneous, to work a reversal of the judgment. We have looked into these rulings, however, and are of the opinion that they involve no material errors.   It is unnecessary to say more on the subject.

*By the Court.*— The judgment of the circuit court is affirmed.