# FRANK GODFREY, TRUSTEE FOR THOMAS METCALF, *v.* HELEN ROWLAND, HING CHUNG, J. F. FRANCIS, KONDO, D. O. HAMMOND, JOSE DO ESPIRITO SANTO, W. O. SMITH, TRUSTEE, AND B. J. GALLAGHER.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED OCTOBER 4, 1904.    DECIDED JANUARY 16, 1905.

FREAR, C.J., HARTWELL AND HATCH, JJ.

MARRIAGE—*license—ceremony.*

In order to prove a legal marriage it is not necessary to prove that a license to marry was issued. The license will be presumed from the celebration of the marriage. Nor need any ceremony be shown to prove a marriage.

ID.—*license—directory only.*

The provisions of sections 1870 and 1871, Civil Laws, requiring a license to marry to be obtained, are directory only, and a failure to comply with the same does not render a marriage void.

ID.—ID.—*record.*

It is not necessary to show, in order to prove a marriage, that a record of the issuance of a marriage license was kept by the officer who issued the same.

LEGITIMACY—*adultery of mother.*

>   Evidence of adultery of the mother cannot be received to prove illegitimacy, if the husband and wife were living together at the time when the child was conceived.

PRESUMPTION OF LEGITIMACY—*proof.*

>   The presumption of legitimacy may be overcome by proof. The proof need not go to the extent of showing the impossibility of legitimacy, neither need it remove every reasonable doubt; it must however be clear, distinct and convincing. A showing of improbability of legitimacy is not sufficient.

PRESUMPTIONS.

>   The presumption of innocence may be offset by the presumption that relations between a man and woman, illicit in the beginning, continued so until proof of a change of status should be offered.

COMMON LAW—*merger—deed of life tenant.*

>   A deed of a life tenant, joined in by a remainder man, will not defeat a contingent estate in this jurisdiction. The common law respecting merger not adopted in Hawaii.

### OPINION OF THE COURT BY HATCH, J.

This is an action of ejectment, coming here on a bill of exceptions from the circuit court of the first circuit. The plaintiff claims as trustee for Thomas Metcalf one undivided half of certain lands situated on the northwest corner of Beretania and Alapai streets in Honolulu. This land was the property of Theophilus Metcalf, deceased, who devised it to his son Frank for life, with remainder to Frank's children lawfully begotten, if any, with remainder over in case of failure of issue. The life tenant died in the year 1900. The plaintiff contends that he represents the only lawfully begotten child of Frank Metcalf, to wit, Thomas Metcalf, who was living at the date of the death of his father. The legitimacy of Frank Metcalf was in issue, and also the fact of a marriage between Frank's father and mother. The jury returned the following verdict:

"We the jury in the above entitled cause find for the defendants in that the evidence fails to show that a record of the issuance of the marriage license was kept as required by law.

>   (Sgd.)    E. E. MOSSMAN, Foreman.

Honolulu, Oahu, September 30, 1903."

The plaintiff excepted to the verdict and filed a motion for a new trial.

The first exception relied upon by the plaintiff is the exception to the giving of defendants' requested instruction No. 7, being subdivision (a) of plaintiff's exception No. 13.

"(a) In order to find a marriage between Frank and Alice Metcalf, you must find that a license to marry was obtained and a marriage ceremony performed, although the license need not necessarily be produced in court to establish this."

This instruction does not correctly state the law as to the necessity for a ceremony of marriage. It is also faulty on account of its vagueness in respect to the necessity to prove a license to marry. The law in force in Hawaii at the date of the marriage in question was as follows:

Civil Laws, "Sec. 1869. It shall not be lawful for any minister of religion of any sect whatsoever, or any other person, to perform the marriage ceremony within this Kingdom, without first obtaining from the Minister of the Interior a license to celebrate marriage."

"Sec. 1870. In order to make valid the marriage contract, it shall be necessary that the respective parties be not to each other within the fourth degree of consanguinity; that the male at the time of contracting the marriage shall be at least seventeen years of age, and the female at least fourteen years of age; that the man shall not at the time have any lawful wife living and that the woman shall not at the time have a lawful husband living; and it shall in no case be lawful for any person to marry in this Kingdom without a license for that purpose duly obtained from the agent duly appointed to grant licenses to marry."

"Sec. 1871. The marriage rite may be performed and solemnized by any person duly authorized by law, upon presentation to him of a license to marry, as prescribed by the foregoing section; who may be at liberty to receive the price to be stipulated by the parties, or the gratification tendered to him."

There is nowhere to be found in our law a provision requiring a ceremony. The most that can be said is that the statute implies a ceremony. Sec. 1871 is permissive merely. It has not even the force of a directory enactment. Sec. 1870 is man-

datory as to all its provisions except that relating to a license. That provision must be held to be simply directory. By the universal rule of construction applied to statutes regulating marriage, wherever it is possible to do so, the provisions must be held to be directory and not mandatory. They are held mandatory only when accompanied by provisions of nullity; if it is provided that upon the failure to perform certain steps made essential to the validity of a marriage such marriage shall be null and void, the provision is held mandatory, but not otherwise. All of the provisions of section 1870, except that in respect to licenses, are framed in language mandatory in nature. It becomes clear that these were intended as mandatory when the enactments in regard to annulment of a marriage are considered. By section 1920 of the Civil Laws all of the requirements which we have called mandatory in section 1870 are repeated as grounds for declaring a marriage null and void. The failure to obtain a marriage license, as required by section 1870, however, is not made a ground for declaring a marrigae void. There being then, no provision of nullity connected with this requirement, it must be held to be directory only; and a failure to comply could not be held to be a ground of nullity, nor to affect the validity of a marriage entered into without it.

In *Meister v. Moore,* 96 U. S. 76, the court says: "Marriage is everywhere regarded as a civil contract. Statutes in many of the states, it is true, regulate the mode of entering into the contract, but they do not confer the right. Hence they are not within the principle, that, where a statute creates a right and provides a remedy for its enforcement the remedy is exclusive. No doubt, a statute may take away a common law right; but there is always a presumption that the legislature has no such intention, unless it be plainly expressed. A statute may declare that no marriages shall be valid unless they are solemnized in a prescribed manner; but such an enactment is a very different thing from a law requiring all marriages to be entered into in the presence of a magistrate or a clergyman, or that it be preceded by a license, or publication of banns, or be attested by

witnesses. Such formal provision may be construed as merely directory instead of being treated as destructive of a common law right to form the marriage relation by words of present assent. And such, we think, has been the rule generally adopted in construing statutes regulating marriage."

In *Parton v. Hervey,* 1 Gray 119, the court says: "But the effect of these and similar statutes is not to render such marriages, when duly solemnized, void, although the statute provisions have not been complied with. They are intended as directory only, upon ministers and magistrates, and to prevent, as far as possible, by penalties on them, the solemnization of marriages when the prescribed conditions and formalities have not been fulfilled. But in the absence of any provision, declaring marriages, not celebrated in a prescribed manner, or between parties of certain ages, absolutely void, it is held that all marriages, regularly made according to the common law, are valid and binding, although had in violation of the specific regulations imposed by statute."

See also Bishop on Marriage and Divorce, 283. (6 Ed.) Bishop says: "Marriage existed before statutes, it is a natural right, it is favored by the law. Hence, in reason, any commands. which a statute may give concerning its solemnization, should, if the form of words will permit, be interpreted as mere directions to the officers of the law and to the parties, not rendering void that which is done in disregard thereof."

In *Republic v. Waipa,* 10 Haw. 442, it was held that it was not necessary to prove that a license to marry had been obtained in order to support a conviction for adultery. The court says: "On the point that the prosecution must prove that a license to marry must be proven, we hold that this is not necessary. 'When the law casts upon an official person a duty connected with his office, and the time for its performance transpires, the *prima facie* presumption is that it is done.' 1 Bishop on Marriage and Divorce, Sec. 450. The presumption holds good until the contrary is shown. It was therefore not necessary to produce the license to marry nor to prove that the agent who granted

it had the requisite authority." The reason for supporting this presumption in a case where the issue is one of inheritance is much stronger than in a case of criminal prosecution for adultery.

In *Cartwright v. McGowan,* 121 Ill. 388, the court lays down this rule: "When the celebration of a marriage is once shown, the contract of marriage, the capacity of the parties, in fact everything necessary to the validity of the marriage, in the absence of proof to the contrary, will be presumed."

The instruction therefore was clearly wrong as to the statement that a ceremony must be proved. It is also wrong in that it allowed the jury to believe that under any circumstances it would be necessary for the plaintiff to offer evidence as to the issuance of a license in presenting his own case. The prejudice resulting to the plaintiff from giving this instruction becomes more apparent when the next two instructions asked by the defendant are considered. These are defendants' requests No. 8 and No. 9. They are as follows:

"8. Under the law as it existed at the time of the alleged marriage of Frank and Alice Metcalf, it was the duty of agents to grant marriage licenses, at the close of each year to transmit a copy of all the licenses granted by them during the year to the board of education, and it then became the duty of such board to preserve the record of such licenses. (Compiled Laws, p. 213.)"

"And I instruct you that where a legal duty is imposed upon an officer or board the presumption arises that such officer or board performs its duty, although this presumption may be overcome by evidence."

"9. Under the law as it existed at the date of said alleged marriage and as it now exists, it was and is the duty of every person authorized to solemnize marriages in this Territory to make and preserve a record of every marriage by him solemnized."

"And I instruct you that where a legal duty is imposed upon a minister the presumption arises that such minister performs his duty, although this presumption may be overcome by evidence."

These instructions introduce into the case matters with which the jury had nothing to do, the consideration of which must have diverted their minds from the real issue. The question for the jury to decide was, did a marriage take place between Frank and Alice Metcalf as claimed by plaintiff. The tendency of the instruction was to produce an impression that in order to prove a valid marriage, the plaintiff must have proved that a license had been issued, that such license was recorded, and that such record was transmitted to the board of education. Legitimacy cannot be made to depend upon the proof or want of proof of the performance by any official of a merely clerical duty. Defendants' counsel protest that these instructions· were not intended to convey such an idea. It seems to us, however, clear that this conclusion might have been drawn from them by the jury. The qualification added by the trial judge did not relieve the instructions of their objectionable features,—they should not have been given at all. On the other hand the presumption that a license was issued may be rebutted by proof to the contrary. And evidence that no license was in fact issued, though not of itself sufficient to disprove marriage, may be· considered, with other circumstances, as tending to prove that a marriage had not taken place, as claimed.

In consequence of errors in defendants' requests for instructions numbered 7, 8 and 9, the verdict should be set aside and a new trial ordered.

We deem it advisable to express our views upon some of the other questions of law upon which rulings were asked. Counsel for defendants requested the following instructions bearing upon the question of the legitimacy of Thomas Metcalf:

"Defendants' instruction numbered 13.

"Although there is a presumption that a child born in lawful wedlock is legitimate, yet if it is not shown that sexual intercourse actually took place between the husband and wife at a time that the husband might have been the father of the child many circumstances may be relevant to rebut the presumption of legitimacy."

"Defendants' instruction numbered 14 as modified.

"Among these circumstances are the relative situation of the parties and their habits in life, and reputation in the family, the adultery of the mother, and other facts bearing on the probabilities of the case. However, the law presumes that the husband and wife do have sexual intercourse until the contrary is shown by competent evidence to the satisfaction of the jury that the husband did not have such access to the mother."

"Defendants' instruction numbered 15.

"It is not necessary for the defendant to go so far as to show that there was no possibility of access between Frank and Alice at or near the time of the child's conception in order to make competent proof of the child's illegitimacy."

"Defendants' instruction numbered 16.

"If you find from the evidence that at or near the time of Thomas' conception, if conceived in 1882, his mother was having or had adulterous intercourse with another man, and if you also find that it is improbable that Frank had access to her at such times, I instruct you that these are circumstances to be weighed by you in arriving at a conclusion as to whether Thomas is legitimate or illegitimate."

The above instruction numbered thirteen does not give sufficient weight to the presumption of legitimacy and seems to imply that a person claiming legitimacy must show something more than birth in lawful wedlock. This is not the case; the burden is entirely upon the party contesting the legitimacy to prove to the satisfaction of the jury the fact of the illegitimacy and to overcome the presumption of legitimacy. This, however, can be done by circumstantial evidence.

In *Hawes v. Draeger*, L. R. 23 Ch. Div. 178, the court says: "That the presumption of legitimacy may be rebutted by circumstances inducing a contrary presumption; and that non-access, or non-generating access, may be proved by means of such legal evidence as is admissable in every other case in which a legal fact has to be proved."

Instructions numbered fourteen and sixteen improperly admit a consideration of probabilities. The presumption of legitimacy cannot be destroyed by a mere probability. The proof must be clear, distinct and convincing. It need not go to

the extent of showing the absolute impossibility of legitimacy in order to be strong enough to overcome the presumption. A showing merely that it was improbable that the husband was the father of the child is not sufficient. No child born in lawful wedlock can be decreed a bastard on any showing of circumstances which only create doubt and suspicion. *Shuman v. Shuman,* 83 Wis. 254. A balance of probabilities is not enough. *Morris v. Davis,* 5 Clark & Finley, 265; *Stegall v. Stegall,* 22 Fed. Cases 1230; *Phillips v. Allen,* 2 Allen 453; *Caijole v. Ferrie,* 23 N. Y. 109; *Orthewein v. Thomas,* 127 Ill. 562.

These instructions also improperly allow a consideration of the alleged adultery of the mother.

If the facts show that the husband and wife were living together, evidence as to the adultery of the wife is absolutely inadmissable. The issue is, as to this phase of the case, whether or not the husband had sexual intercourse with the wife. The adultery of the wife has no bearing on this question, and it certainly cannot be used as evidence tending to show that the husband did not in fact have intercourse with the wife.

In *Hopkins v. Chung Wa,* 4 Haw. 650, this court went to the extent of holding that even evidence of the child's admixture of blood is inadmissable to rebut the presumption of legitimacy, and that the adultery of the wife could not be shown, the husband and wife having lived together during a year or more previous to the birth of the child.

"It is established law that every child born in wedlock, when the husband is not shown to be impotent, is presumed to be legitimate, even though the parties are living apart by mutual consent; that this presumption—(as held in modern times) may be rebutted by proof that the husband had no access to his wife during the time when, according to course of nature, he could be the father of the child; but that the presumption cannot be rebutted by proof of the wife's adultery while cohabiting with her husband—the law not allowing the admission of evidence on the question, whether the adulterer or the husband is most likely to be the father of the child." *Hemmenway, v. Towner,* 1 Allen, 209.

Defendants' instruction numbered fifteen is correct. It is not necessary for the defendant to go so far as to show that there was no possibility of access between Frank and Alice at or near the time of the child's conception in order to make competent proof of the child's illegitimacy.

It was once held that the presumption of legitimacy, if the husband by possibility could have had access to the wife, could not be disproved; the early rule being that if the husband was "within the four seas" the child was legitimate and the contrary could not be shown. Later, it was held that if the fact of marriage has been proved, nothing can impugn the legitimacy of the issue short of proof of facts showing it to be impossible that the husband could be the father. *Patterson v. Gaines,* 6 How. 550. The point actually decided in *Patterson v. Gaines,* however, was that a child could not be bastardized by the mere declarations of the father. In *Phillips v. Allen,* 2 Allen 453, it was held that the presumption of legitimacy can only be rebutted by evidence which proves beyond all reasonable doubt that the husband could not have been the father. These cases show a survival of a trace of the old *quatuor maria* idea. We understand the modern rule to be that proof of non-access need not go to the extent of showing the impossibility of the husband being the father; neither is it necessary that the proof should be clear beyond every reasonable doubt. If it is once held that the presumption may be rebutted at all, there seems to be no logical reason why the fact of illegitimacy should be required to be proved in any other manner than is any other fact in a court of justice. This seems to have been the view of the House of Lords in *Morris v. Davies.* On page 244, Lord Cottenham said, "the argument for the appellant assumes as a rule of law, that no evidence is admissible to disprove sexual intercourse having taken place, where the opportunity is proved to have existed, the husband and wife being proved to have been within the same house. This is very like attempting to establish a doctrine of *intra quatuor muros,* instead of the exploded doctrine of *quatuor maria.* But it is admitted that the parties may be followed

within these four walls, and the fact of sexual intercourse not only disproved by direct testimony, but by circumstantial evidence raising a strong presumption against the fact. If so the principle does not stand on any positive rule of law, *but upon evidence of the fact as to which the ordinary rules of evidence must be applied."* And again on page 260 it is said the presumption stands until encountered by such evidence as proved *to the satisfaction of those who are to decide the question* that sexual intercourse did not take place. And on page 261 "that it is the duty of a jury and your Lordships to weigh the evidence against the presumption and to decide according as, in the exercise of free and honest judgment, either may appear to preponderate."

Defendants' request number 11 was as follows:

"If you find from the evidence that Frank and Alice were illicitly cohabiting together before the alleged marriage, I charge you that the presumption arising therefrom is that they continued to cohabit illicitly, and unless you find that such presumption has been overcome by evidence of their marriage, you must find for the defendant."

This instruction is correct. The plaintiff contends that the presumption of continuing illicit relations was overcome by the presumption of innocence, and that the presumption of marriage arising from cohabitation is one of the strongest known to the law, especially in cases involving legitimacy. The first presumption is one easily overcome by evidence of marriage. The second presumption is a presumption which increases in force with the length of time during which the parties live together as husband and wife.

"The presumption of legitimacy is a constant presumption, and is to have weight and influence throughout the investigation, the weight of the presumption increasing with lapse of time." *Shuman v. Shuman,* 83 Wis. 254; *Ingersoll v. McWillie,* 30 S. W. 61.

In the present case Frank and Alice Metcalf lived together as man and wife after the alleged marriage for only three years. This weakens materially the force of the presumption of inno-

cence.  Under all the circumstances of the case it appears to us
that the presumptions offset each other, which would leave it to
the plaintiff to prove affirmatively the marriage upon which he
relies, uninfluenced by any presumption one way or the other.

The trial judge erred in excluding the evidence of the issu-
ance of a marriage license offered by the plaintiff in rebuttal.
The testimony, though not contradicting any one expression of
any of the witnesses produced by the defendant, rebuts the whole
theory of the defense and should have been received.

It is urged that notwithstanding any errors appearing in the
record the verdict should not be disturbed for the reason that the
deed offered in evidence by the defendants (defendants' exhibit
1) from Frank Metcalf to Julia Prosser, Helen Rowland and
W. G. Rowland, trustee, dated March 9th, 1875, operated to
destroy the contingent estate of any children of Frank Metcalf
and that defendant Helen Rowland must have judgment in
any event.  Frank Metcalf, by the third paragraph of the will
of his father Theophilus Metcalf, took a life estate in the land
in question, with remainder to his children lawfully begotten
should he leave any; otherwise the property was devised to the
testator's daughters Helen and Julia should they survive Frank
or the survivor of his said daughters.  The fourth paragraph of
the will shows that life estates only were intended to the daugh-
ters, a gift over to their children being made, in case they left
any lawfully begotten, and a disposition being made in case of
the decease of one of the daughters without children.  The con-
tention is that in consequence of the adoption of the common
law by the act of 1892 the common law doctrine of merger
applies, and the contingent remainder in Frank Metcalf's chil-
dren was squeezed out and destroyed by the deed of Frank above
stated.  The common law, except as to certain doctrines spe-
cially adopted, was not in force in Hawaii in 1875, the time
when the deed in question was made.  Nor did its subsequent
adoption affect Hawaiian conveyancing.  The adoption of the
common law was not unqualified.  It was excluded when in
conflict with the laws, judicial precedents, or usage of Hawaii.

Long before the adoption of the common law a system of conveyancing had grown up in Hawaii by national usage and had become fixed in character. Feoffments and livery of seisin were unknown, as were all of the incidents of the feudal system. The Hawaiian deed was analogous to a bargain and sale deed, and was dependent for its force and effect, until the statute of uses was recognized, upon Hawaiian usage. The statute of uses, however, became law at an early date in Hawaii. As pointed out in *Haw. Trust Co. v. Barton,* decided at the present term, the statute of uses must be held to have been in effect here since 1855. But at common law a merger would not result from a deed of bargain and sale. The distinguishing feature of a common law deed of bargain and sale was that it passed no greater title than the grantor had to convey. In *Dennett v. Dennett,* 40 N. H. 565, the court says: "But it is settled that conveyances which derive their operation from the statute of uses, as a bargain and sale, lease and release, and the like do not bar contingent remainders, for none of them pass any greater estate than the grantor may lawfully convey." No greater effect can be given to a conveyance here. The deed of Frank Metcalf operated upon his life estate only, and did not affect the contingent remainder in any child which he might lawfully have begotten.

It is finally contended that there was not sufficient proof of possession by any of the defendants to support a verdict against them. This was made one of the grounds of a motion by defendants for a directed verdict. The motion was overruled and an exception taken by defendants. There was evidence of possession by the defendant Helen Rowland, but none as to the other defendants. As to the latter the verdict should stand. As to the defendant Helen Rowland the extent of her possession was not made an issue in the case, nor was there any disclaimer by her as to any portion of the land claimed. The jury might have found her possession co-extensive with the title claimed by her. The indefiniteness of the testimony as to the extent of her possession was not such a fundamental defect in the plaintiff's case

as to control any subsequent finding. It is not in its nature conclusive, and should not in our opinion deprive the plaintiff of his right to a reversal of the verdict in consequence of the errors committed on the trial. As to the defendant Helen Rowland the verdict is set aside and a new trial ordered. The case is remanded to the circuit court for the first circuit for further proceedings.

*Robertson & Wilder, F. E. Thompson* and *C. F. Clemons* for plaintiff.

*Kinney, McClanahan & Cooper* for defendants.