Syllabus.

# FRANCES L. PARKE v. JANE S. PARKE, ANNIE H. PARKE, BERNICE P. WALBRIDGE AND HAWAIIAN TRUST COMPANY, LIMITED, AN HAWAIIAN CORPORATION, AS ADMINISTRATOR OF THE ESTATE OF WILLIAM C. PARKE, DECEASED.

## No. 1177.

APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT.
HON. C. W. ASHFORD, JUDGE.

ARGUED FEBRUARY 24, 1920.                DECIDED APRIL 6, 1920.

COKE, C. J., KEMP AND EDINGS, JJ.

MARRIAGE—*license.*

It is provided in section 2905 R. L. 1915 (Sec. 1870 Civ. L. 1897) that "it shall in no case be lawful for any persons to marry in this Territory without a license for that purpose duly obtained from an agent duly appointed to grant licenses to marry in the judicial district in which the marriage is to be celebrated." This provision while clearly prohibitory contains no words of nullity.

SAME—*same.*

Section 8 R. L. 1915 (Sec. 8, Civ. L. 1897), which reads: "Whatever is done in contravention of a prohibitory law is void although the nullity be not formally directed," expressly renders null whatever is done in contravention of a prohibitory law. These two sections must be considered in *pari materia.*

SAME—*same.*

A license is a prerequisite to a valid marriage in this Territory. Marriages *per verba de praesenti,* as recognized by the common law, are void here. *Godfrey* v. *Rowland,* 16 Haw. 377, holding to the contrary, overruled.

OPINION OF THE COURT BY COKE, C. J.

This is an appeal prosecuted by complainant-appellant from a decree of the circuit court of the first judicial cir-

cuit sitting in equity dismissing her bill of complaint. A summarized history of the controversy is as follows: William C. Parke, a resident of Honolulu, died intestate on November 17, 1917, leaving an estate in the Territory of Hawaii consisting of real and personal property of the approximate value of $250,000. Following his death and upon the petition of his sisters, the respondents Jane S. Parke, Annie H. Parke and Bernice P. Walbridge, and who claim to be his heirs, the respondent Hawaiian Trust Company, Limited, a corporation, was by the probate court of the first judicial circuit duly appointed administrator of said estate. In July 1918 the administrator filed its final accounts together with a petition for the approval thereof and for an order of distribution. The appellant, who styles herself Frances L. Parke, filed in the proceeding in probate a petition alleging that she was at the time of the death of William C. Parke his lawful wife and one of his heirs at law and as such was entitled to one-half of his estate. The respondents interposed pleas to the petition alleging that the three above-named sisters of William C. Parke are the sole and only heirs at law of decedent, denying that petitioner was his wife and setting up a release claimed to have been executed by the appellant under the name of Fannie Kunewa on January 26, 1918, whereby she had forever discharged the estate of William C. Parke and his executors, administrators and heirs of and from all manner of actions, suits or demands in law and in equity which she might have had against the estate of William C. Parke or his representatives. The release reads as follows: "Know all Men by these Presents: That for and in consideration of certain payments of money made and to be made to me by William L. Whitney, trustee, of Honolulu, Territory of Hawaii, I, Fannie Kunewa, of said Honolulu, do hereby remise, release and forever discharge the estate of Will-

iam C. Parke, deceased, his executors, administrators, heirs and assigns of and from all manner of actions, suits or demands in law or in equity, which against the said estate of William C. Parke, his administrators, heirs or assigns I have had, now have, or which my heirs, executors, administrators or assigns or any of them, can, shall or may have by reason of any matter, cause or thing whatsoever.    In Witness Whereof I have hereunto set my hand this 26th day of January, 1919. (Sgd) Fannie Kunewa. Witness to Signature (Sgd.) Wm. L. Whitney."

This release constituting a bar to petitioner's claim in the probate court she filed her bill in equity in the circuit court to have the respondents enjoined from using said release and for a cancellation thereof.    The averments of the bill in equity set forth that the complainant (appellant herein) became the lawful wife of William C. Parke on the 13th day of November, 1912, and that she thereafter lived with him as his wife until the date of his death, November 17, 1917, and as such wife she is entitled to a distributive share of the estate; that complainant signed the purported release at the instance of Wm. L. Whitney not knowing the contents thereof and under a misapprehension of the effect thereof; that at the time of the execution of the release she was in ill health; that she was confused and that she understood that she was merely signing a receipt for temporary maintenance and had no thought or intention that the document was in fact a settlement of, or in any way affected, her dower right in the estate.    The respondents joined issue and voluminous testimony was introduced at the trial.

It is not claimed by the appellant that any license to marry was first obtained or that there was a marriage celebrated by the publication of bans or a public wedding of any nature, but she insists that she and William C. Parke by mutual consent and agreement took each other

*per verba de praesenti* as husband and wife on the 13th day of November, 1912, and lived together as such until his death. In other words, it is contended by the appellant that her marriage to Parke was a common law marriage as distinguished from a statutory marriage which prescribes that a license to marry must first be obtained and contemplates a ceremony conducted by a person duly authorized to perform marriages in this Territory. It is admitted that there are no children as the issue of this alleged marriage.

The judge of the court below in an opinion which admirably and adequately reviewed the law and the evidence found that the relations existing between appellant and Parke were meretricious rather than matrimonial; that there was neither a common law marriage nor any marriage existing between the parties; and further found that appellant at the time she signed the release in question had no claim of any legal character against the estate of William C. Parke; that at the time she was not under misapprehension or duress nor was there any other circumstance which might warrant a revocation of the release.

It was argued in the court below by counsel for appellees that a common law marriage is not valid in this Territory. But the trial judge having before him the opinion of this court rendered in *Godfrey* v. *Rowland*, 16 Haw. 377, where the validity of a common law marriage in Hawaii is upheld he properly deemed himself to be bound by that opinion. Counsel again present the same argument here.

We of course labor under no such limitation as circumscribed the actions of the circuit judge but out of regard for the certainty and stability of the law this court would be loath to set aside one of its former decisions and especially where to do so property rights and per-

sonal relations might be disturbed. We think, however, that slight, if any, hardship would follow as a result of our refusal to acquiesce in the decision laid down in the *Godfrey-Rowland* case. If that decision is wrong it should be overruled at this time so that the public may not any longer be misled by it. It is generally better to establish a new rule than to follow a bad precedent. We therefore conclude that we owe it to the community as well as to these litigants to review the *Godfrey-Rowland* opinion and to repudiate it if in our opinion it is unsound.

The *Godfrey-Rowland* case was an action of ejectment wherein it became necessary for the plaintiff to prove that Thomas Metcalf was the legitimate son of Frank Metcalf and hence that his parents were lawfully married. The court was construing the provisions of section 1870 Civ. L. 1897. That section, with amendments which are immaterial to this opinion, is the same as section 2905 R. L. 1915, which reads as follows: "In order to make valid the marriage contract, it shall be necessary that the respective parties be not related to each other nearer than in the fourth degree of consanguinity; that the male at the time of contracting the marriage shall be at least eighteen years of age, and the female at least fifteen years of age; that the man shall not at the time have any lawful wife living and that the woman shall not at the time have any lawful husband living; and it shall in no case be lawful for any persons to marry in this Territory without a license for that purpose duly obtained from the agent duly appointed to grant licenses to marry in the judicial district in which the marriage is to be celebrated." The court then proceeded to make use of the following language: "Section 1870 is mandatory as to its provisions except that relating to a license. That provision must be held to be simply directory. By the

universal rule of construction applied to statutes regu-
lating marriage, wherever it is possible to do so, the
provisions must be held to be directory and not manda-
tory. They are held mandatory only when accompanied
by provisions of nullity; if it is provided that upon the
failure to perform certain steps made essential to the
validity of a marriage such marriage shall be null and
void, the provision is held mandatory, but not otherwise.
All of the provisions of section 1870, except that in
respect to licenses, are framed in language mandatory in
nature." And on a motion for a rehearing of the case
(16 Haw. 505) the court said: "The court held that the
statutory provisions concerning marriage referred to in
the defendant's motion were mandatory, except that re-
lating to a license, which it held to be directory. This
necessarily meant, and it was after due deliberation in-
tended to mean, that persons could be legally married
in contemplation of this article (Sections 1875 C. L.,
1289 C. C.) who had not a marriage license. Distinction
is made between those things which the statute declares
shall be necessary 'in order to make valid the marriage
contract,' and the provision that 'it shall in no case be
lawful for any person to marry without a license,' be-
tween a legal or valid marriage and one which is not in
conformity with directory requirements of the statute."

If section 2905 R. L. 1915 could properly have been
considered entirely without relation to any other con-
temporaneous statute we would be inclined to agree, as
held in the *Godfrey-Rowland* opinion, that the provision
relating to a license is merely directory because unaccom-
panied by any provisions of nullity. But there existed
at that time a statute which must have been overlooked
by the justices of the supreme court when engaged in
formulating that opinion, that is, section 8 of chapter
3 R. L. 1915, which is to be found under the heading

"Operation of Laws," and which reads as follows: "Section 8. Prohibitory. Whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed." Laws upon the same subject are construed with reference to each other and it thus becomes necessary to consider these two statutes in *pari materia*. It is provided in section 2905 that "it shall in no case be lawful for any persons to marry in this Territory without a license for that purpose duly obtained .from an agent duly appointed to grant licenses to marry in the judicial district in which the marriage is to be celebrated." Here we have a law which is clearly prohibitory but which within itself contains no words of nullity. Section 8, however, supplies this deficiency and expressly renders null and void whatever is done in contravention of a prohibitory law. A prohibitory law is defined as "one which forbids all actions which disturb the public repose, or injury to private rights, or crimes or misdemeanors, or certain actions in relation to the transmission of estates, the capacity of persons, or their objects" (26 A. & E. Enc. L. 533). Neither in the opinion nor in the entire record in the *Godfrey-Rowland* case is section 8 mentioned, and we must therefore conclude that had the court been aware of its existence the *Godfrey-Rowland* opinion would not have been rendered. In the very earliest laws enacted in these islands there is plainly expressed a determined effort to protect morality and the social order as well as the rights of property by requiring a marriage license as a prerequisite to the right to marry and providing penal consequences for a violation of that requirement. In section 11, chapter 10, Laws 1842 (see Fundamental Law of Hawaii), it is provided that "Those who desire to be united in wedlock shall first go to the governor or to his agent, and obtain a written assent to their marriage, and then it shall be proper for

the priest to solemnize the marriage." And in section 12 it is provided: "If any one disregard * * * the XI section of this law, or if any one shall unite persons in marriage in a manner at variance with any part of this law, he shall be fined one hundred dollars." These enactments clearly demonstrate an early determination on the part of the law-makers in these Islands to add vitality to the loose and doubtful marriage system which had grown up under the common law and to make of marriage a homogeneous, staple and certain institution. It is true the statutes of 1842 were merely penal and contained no words of nullity but when at a later date sections 8 and 2905 were enacted this defect was provided for.

Prior to 1844 contracts to marry *per verba de praesenti* were recognized as valid in England but in that year the doctrine was repudiated and down to the present date marriages are valid only if solemnized according to the marriage act of the realm. Among the United States there is an astonishing lack of uniformity in the laws on this subject. In some of the states common law marriages are still recognized while in others the reverse is true. The modern tendency, however, is to recognize marriage as something more than a civil contract for it creates a social status or relation between the contracting parties in which not only they but the state as well are interested and involves a personal union of those participating in it of a character unknown to any other human relation and having more to do with the morals and civilization of the people than any other institution. For these reasons there is a gradual tendency to protect the parties as well as society by reasonable requirements unknown to the common law but which at the same time are not burdensome nor calculated to discourage marriage among those who ought to assume that relation.

We are mindful that a former unanimous opinion by the justices of this court should not be lightly overturned but here we are confronted with an occasion where a departure from a former decision which has become a precedent is rendered necessary in order to vindicate plain and obvious principles of law. We are therefore compelled to overrule that part of the *Godfrey-Rowland* opinion which holds that a marriage in this Territory is valid notwithstanding no license to marry is first obtained by the parties. This conclusion disposes of the case adversely to the appellant.

But while this opinion is devoted mainly to a discussion and determination of a question which was not available to the trial judge yet it must not be inferred that we disagree with his decision or conclusions. He found as a matter of fact, and was amply sustained by the evidence and we concur therein, that the relations between the appellant and Parke were entirely illicit; that there was no marriage between them, either common law, statutory or otherwise. This necessitated the dismissal of appellant's bill as the relief she sought could avail her nothing.

The decree appealed from is affirmed.

*W. B. Pittman* (*Andrews & Pittman* on the brief) for complainant.

*A. G. M. Robertson* and *W. F. Frear* (*Frear, Prosser, Anderson & Marx* and *Robertson & Olson* on the brief) for respondents.