Estate of Lewis: Johnson and others, Appellants, vs. Metcalf, Administrator, and others, Respondents.

*January 14—February 9, 1932.*

For the appellants there was a brief by *Walker & Christenson* of Lancaster, and oral argument by *R. D. Walker* and *O. C. Christenson*.

*Harry E. Carthew* of Lancaster, for the respondents.

NELSON, J.  The facts upon which a reversal of the judgment is sought are not in dispute.  In the year 1869 Martha Jane Jordan resided with her father and mother, William and Martha Jordan, on a farm in the town of Glen Haven in Grant county.  On February 23, 1869, Martha, who was then nearly twenty years of age, attended a dance in the company of Charles Kaufman, a young man residing some two and a half miles distant from her father's farm.  Margaret Kaufman, a sister of Charles, attended the dance in the company of one Robert Marlow, to whom she was engaged to be married.  During the progress of the dance it was proposed by some of the young people just mentioned that the two couples get married after the dance.  When the dance was over they proceeded to a justice of the peace where both couples were married.  Thereafter Martha and Charles, either the same day or the day following, went to Martha's home and advised her parents of their marriage.  The parents of Martha were apparently opposed to the marriage and raised quite a row about it which, within a few days, resulted in Charles' going to his father's home and Martha's remaining with her parents.  On February 24, 1870, an action for

divorce was started by Martha which resulted in the entry of a judgment of divorce on the 19th day of March, 1870. On November 11, 1870, Martha gave birth to a daughter, Mira Jordan, who in later years became the wife of one Lewis, and in the administration of whose estate this contest arose. It is undisputed that Mira Lewis was born just 237 days from the date of the entry of judgment dissolving the marriage between her mother and Charles Kaufman.

Mira Lewis died intestate leaving no husband, no child or children or descendant, no parent, and no brother or sister (unless the appellants herein are held to be such). William L. Miller, one of the respondents, is a first cousin of said deceased and as such was held by the court to be her sole heir at law.

The appellants contend that since Mira Lewis was born 237 days after the entry of the judgment of divorce dissolving the marriage between her mother and Charles Kaufman, which period of time is clearly within the normal period of gestation, she must be presumed to have been born or conceived during wedlock and must therefore be held to be the legitimate child of Charles Kaufman.

Charles Kaufman, after being divorced by Martha, married again and became the father of eight children, the appellants herein. The appellants invoke the well established rule that all children born or conceived in wedlock are presumed to be legitimate unless such presumption is overcome by that high degree of proof which the established law requires. If Mira Lewis was the legitimate child of Martha and Charles Kaufman, then the appellants as her half-brothers and sisters take her estate. If, on the other hand, Mira Lewis was in fact the illegitimate child of Martha Jane Jordan, then it follows that she was in no wise related to the appellants and that William L. Miller is her next of kin and sole heir at law.

At the rather extended hearing in the court below the appellants proved the marriage of Martha Jane to Charles Kaufman, the entry of the judgment of divorce, the birth of Mira Jordan (Lewis) and the date thereof, and that during the years 1869 and 1870, including the time when Mira Lewis was conceived, Charles Kaufman resided with his parents on their farm located about two and a half miles from the Jordan home where Martha Jane resided.

The appellants contend that the undisputed facts give rise to the presumption that Mira Lewis was the legitimate child of Martha and Charles Kaufman and that the evidence wholly fails to overcome the presumption of legitimacy invoked.

The law is well established in this state that every child born or conceived in wedlock is presumed to be legitimate. *Mink v. State*, 60 Wis. 583, 19 N. W. 445; *Watts v. Owens*, 62 Wis. 512, 22 N. W. 720; *Shuman v. Shuman*, 83 Wis. 250, 53 N. W. 455; *Riley v. State*, 187 Wis. 156, 203 N. W. 767; 7 Corp. Jur. pp. 940, 941, 942. This presumption is generally held to be one of the strongest presumptions known to the law, but nevertheless one which may be overcome if and when the proof is sufficient under the rules of law applicable. At early common law this presumption was regarded as conclusive unless it appeared that the husband, during the possible time of conception, was beyond the four seas. *Shuman v. Shuman, supra,* p. 254.; *Riley v. State, supra,* p. 159; 7 Corp. Jur. p. 941; 5 Wigmore, Evidence (2d ed.) § 2527. In other words, it was held that if the husband was within the four seas at any time during the pregnancy of the wife the presumption in favor of legitimacy was conclusive unless the husband was impotent. This doctrine, however, was long ago modified so that the rule which now prevails in this state, and quite generally, is that stated by Lord LANGDALE, M. R., in *Har-*

*grave v. Hargrave,* 9 Beav. 552, and approved by this court in *Shuman v. Shuman, supra,* and in *Riley v. State, supra,* as follows (p. 159) :

"A child born of a married woman is, in the first instance, presumed to be legitimate. The presumption thus established by law is not to be rebutted by circumstances which only create doubt and suspicion, but it may be wholly removed by proper and sufficient evidence showing that the husband was (1) incompetent; (2) entirely absent, so as to have no intercourse or communication of any kind with the mother; (3) entirely absent at the period during which the child must, in the course of nature, have been begotten; or (4) only present under such circumstances, as afford clear and satisfactory proof that there was no sexual intercourse."

Applying the established law to the present case it is apparent that Charles Kaufman was not incompetent, was not entirely absent so as to have no association of any kind with the mother, was not entirely absent at the period during which Mira Lewis must have been begotten. The question therefore arises: Was he only present under such circumstances as afford clear and satisfactory proof that there was no sexual intercourse between him and Martha Jane during the wedlock when Mira Lewis was conceived.

While the presumption of legitimacy may be overcome by evidence, the established law requires a high degree of proof to accomplish such a result. In *Mink v. State, supra,* it was said that "this presumption must be overcome by the clearest evidence that it was impossible for him, by reason of impotency or imbecility, or entire absence from the place where the wife was during such time, to have had access to the wife, or to be the father of the child."

In *Watts v. Owens, supra,* it was said (pp. 519, 520) :

"To bastardize and disinherit a child born in lawful wedlock, the most clear and conclusive evidence of non-access is required."

In *Riley v. State, supra* (p. 159), Mr. Justice JONES, speaking for the court, said:

"It is clear that it is the law in this state, based upon grounds of public policy as well as that of the protection of the good name of children born under such circumstances, that a strong degree of proof is required to bastardize children born in wedlock."

It is therefore apparent that, while this strong presumption may be overcome, it must be by "the clearest evidence," "the most clear and conclusive evidence," "a strong degree of proof."

The law being so clearly established, the only question for determination herein is whether or not this presumption to which the undisputed evidence gives rise was overcome by that strong degree of proof required in such cases. This is the vital question for determination, and necessitates a careful review of the evidence. The events and happenings out of which this controversy arose occurred in the years 1869 and 1870. The trial below occurred in November, 1929, about fifty-nine years after the birth of Mira Lewis. At the time of the trial Mira Lewis was, of course, deceased; her mother, Martha Jane, and her alleged father, Charles Kaufman, her grandfather and grandmother, as well as all of her uncles and aunts, were likewise deceased. No one who was a member of her mother's family in 1869 or 1870 survived. There was therefore necessarily a complete lack of family reputation which might have been of considerable probative value had there been any immediate member of the family surviving to testify to it. The testimony concerning the happening of events in 1869 and 1870 necessarily had to be given by witnesses who, at the time of the trial, had attained to the ages of seventy to eighty years. A number of witnesses ranging in ages from seventy-two to seventy-eight years were produced. All of them had resided in the town of Glen Haven in 1869 and 1870. In the

main these witnesses testified as to their acquaintance with both Martha Jane and Charles Kaufman, as to their hasty marriage without any particular prior keeping of company, as to the objections raised by the parents of Martha Jane to the marriage, as to the separation of Martha and Charles after a day or two, as to Martha's thereafter residing with her parents and Charles with his, as to their not being seen thereafter in each other's company, and, so far as witnesses knew, as to there having been no further association between them or opportunity for intercourse subsequent to the date of their separation shortly after their marriage. A careful reading of the record reveals that the testimony of the several aged witnesses was based in large part on hearsay, rumor, and reputation in the community where they had resided nearly sixty years before. So far as their testimony related to not having seen Martha and Charles together after February, 1869, or to never having seen Charles in the vicinity of the Jordan home where Martha resided after the separation, it was not only quite weak but purely negative in character and not at all conclusive or controlling. There was testimony to the effect that before Martha Jane married Charles Kaufman she had kept company with one William Bateman, who at the time of the marriage was in England, but that during the year 1870 he was again residing in that community. One of the aged witnesses testified that he had known William Bateman and that in the year 1870 Bateman was staying at the same farm where the witness resided; that some time during that year the mother of Martha Jane interviewed William Bateman and accused him of being responsible for Martha Jane's condition. A careful consideration of the testimony contained in the record convinces us that it is not of that character which satisfies the strong degree of proof required to overcome the legal presumption hereinbefore discussed. None of the aged witnesses who testified to these events were re-

lated to the Jordans, and all were, at the time of the events related, between twelve and seventeen years of age. It is our conclusion that the evidence produced was insufficient to overcome the presumption of legitimacy.

The evidence is undisputed that the appellants never recognized Mira Lewis as a half-sister in her lifetime; that when their father, Charles Kaufman, died, one of the appellants applied to the county court of Grant county for a certificate of descent; that the petition stated that the appellants and their mother were the sole and only heirs at law of Charles Kaufman, deceased; and that Mira Lewis did not share as an heir in his property. All of these facts, however, do not change the actual relationship between Mira Lewis and her parents or have any particular probative value in establishing illegitimacy. It is quite apparent from the full record that the Kaufman children, the appellants herein, grew to manhood and womanhood unmindful of their relationship to Mira Lewis. Just how their possible relationship to her was brought home to them does not appear. Mira Lewis died on the 18th day of January, 1926. Thereafter respondent Miller promptly petitioned for the administration of her estate. Several months thereafter the appellants likewise petitioned for administration.

The respondents make a further contention which must receive brief consideration. It is contended that the determination of heirship by the court below is not subject to review on this appeal for the reason that no timely appeal was taken by the appellants from the determination of heirship found by the court on July 15, 1930. An examination of the record reveals that on October 8, 1929, the administrator filed a petition for final settlement and for a determination of heirship, alleging that both Miller and appellants claimed to be next of kin and heirs at law. Pursuant to an order for hearing and due notice given, the matter of the determination of heirship and settlement of

the administrator's account came on for hearing November 27, 1929. After due hearing was had the court determined or decided the matter as of July 15, 1930, but no order was entered at that time. We have examined with particular care the determination of heirship dated July 15, 1930, and have concluded that such instrument constituted merely the court's findings of fact, conclusions of law, and decision. The determination, if such it may be called, is contained in the record and is entitled "Decision." The administrator was required to render a supplemental account of his doings since the date of his original account, and, upon acceptance and allowance of the same, the residue of the estate was to be assigned by order of the court to William L. Miller as sole and only heir at law of Mira Lewis, deceased. We think that the decision of the court did not constitute an appealable order under all of the circumstances revealed in the record.

While the result may seem harsh to the respondent it is the only one which the well established law will permit under the state of the record.

*By the Court.*—Judgment reversed, with directions to enter final judgment in said estate assigning the remainder of the estate to the appellants herein.