[Civ. No. 8391. First Appellate District, Division Two.—March 31, 1932.]

HARRIETTE E. WHITELAW, an Infant, etc., Respondent, v. JAMES CHARLES WHITELAW, an Infant, etc., Appellant.

Jackson & Peterson and Clell H. McCredie for Appellant.

Hilary H. Crawford for Respondent.

SPENCE, J.—This is an appeal by defendant from those portions of the interlocutory decree of divorce wherein it is adjudged that defendant is the father of the minor child of plaintiff and wherein said defendant is ordered to pay to plaintiff the sum of $15 per month for the support of said minor child.

At the time of the trial in 1929 plaintiff was of the age of sixteen years and defendant was of the age of seventeen years. It was admitted that the parties had one act of sexual intercourse, the date fixed in the testimony being December 22, 1927. Thereafter plaintiff became pregnant and the parties with full knowledge of that fact were married with the consent of their parents on April 23, 1928. The child was born on August 8, 1928.

Appellant's first contention is that he is not the father of respondent's child. This is equivalent to a contention that the evidence is insufficient to support the trial court's finding to the contrary. We find no merit in this contention. It is unnecessary to discuss whether the presumptions relating to legitimacy have any application to cases involving antenuptial conceptions for in our opinion the evidence was sufficient to sustain the findings without the aid of any presumptions. Both parties testified that they had an act of sexual intercourse as above set forth and respond-

ent testified that she never had intercourse with any other man. If respondent spoke the truth, the findings are amply sustained and on this appeal we cannot disregard her testimony unless it may be said to be so inherently improbable as to be wholly unworthy of belief. In this connection appellant points to the fact that the child was born 230 days after the known date of the single act of intercourse and he quotes at length from numerous standard medical works relating to the subject under discussion. These authorities and the medical witnesses were substantially in accord to the effect that the *usual* period of gestation covers approximately 269 days after the known date of intercourse. But the authorities on the subject demonstrate the fact that the period of gestation varies greatly. As was stated in *State* v. *Law,* 93 Kan. 357 [144 Pac. 232, at page 233], quoting from Garrigues on Obstetrics: "Based on large statistics, the supposition is warranted that in women the time varies between 220 and 320 days, counting from the fecundating intercourse." We may say in passing that the various authorities record many cases where the period of gestation was even less than 220 days. Appellant further calls our attention to the testimony of his own medical witnesses, who expressed the opinion that the child was a "full time baby". Respondent's physician gave testimony tending to show that the child was not fully developed in some respects and he expressed his opinion that the child was prematurely born. These were all opinions based largely on the development of the child at birth. This test does not seem to be an infallible one. Taking one of the authorities upon which appellant relies, we quote from Edgar on the Practice of Obstetrics (1926) at page 557, as follows: "In other words, one birth out of six, the world over, is probably premature. . . . A child may be born at term and yet be backward in development; and, conversely, children may be born before term and yet be fully mature." Again, on page 558 the same author says: "From the twenty-eighth to the thirty-second week the pupillary membrane disappears, the intense red color fades out, the subcutaneous fat becomes diffused over the body, and the nails are developed nearly as far as the finger tips. Children born during this period are viable. From the thirty-second to the thirty-sixth week the child resembles a mature infant, the differences being of degree only." In 1 Taylor's Principles and

Practice of Medical Jurisprudence, seventh edition, the usual characteristics of a child at the various stages of gestation are given, but it is pointed out on page 200 that ''in some cases a seven-months cannot be distinguished with certainty from a nine-months child''. Assuming that the date of intercourse in the present case was correctly recalled by respondent, the child was born at the end of the thirty-third week and this may well be one of those cases of early development where the child appeared to be a ''full time baby''.

A further discussion of this subject would serve no useful purpose. It is more extensively treated in *State* v. *Law, supra,* where the court affirmed the judgment of the lower court adjudging the defendant to be the father of a child born 217 days after the act of intercourse. We may further observe that in the present case no effort was made upon the trial to ascertain how this young girl fixed the exact date of the act of intercourse. She may have been mistaken on this subject and as was said in *Peterson* v. *People,* 74 Ill. App. 178, at page 180, where 231 days elapsed, ''One thing is certain, if the complaining witness tells the truth in saying she never had intercourse with any one other than appellant, he must be the father of the child, whether she is correct as to dates or not.'' But again assuming the correctness of the date specified we find nothing contrary to the laws of nature or inherently improbable in the testimony of respondent and the trial court's findings regarding paternity are amply sustained.

■ Appellant further complains of the exclusion of certain evidence. Appellant called a young man to the stand who testified that he had attended a Hallowe'en party on October 31, 1927, at which respondent was present. The witness was then asked to state ''her conduct at that time with reference to her relationship with other boys''. Objection was made upon the ground that it was irrelevant and immaterial and did not tend to prove that respondent had intercourse with anyone other than appellant. Counsel for appellant made no offer of proof disclosing what he expected from the witness but merely stated that it was difficult to prove ''a matter of this kind and the only way we can do it is by indirect evidence''. An offer of proof should have been made and in the absence of such offer we are unable to say that the

sustaining of the objection to this broad and indefinite question constituted prejudicial error. (2 Cal. Jur. 275.) █ Appellant called another young man who was asked if he had ever had intercourse with respondent. He stated that he had not and in answer to further questions denied that he had ever made any statement to the contrary. Appellant then sought to impeach his own witness by producing another witness for the apparent purpose of proving that the former witness had previously made such statement. An objection was sustained to the question propounded to this witness regarding such alleged statement. Appellant contends that the trial court erred in sustaining the objection, citing section 2049 of the Code of Civil Procedure. There is no merit in this contention. There are definite limitations upon a party's right to impeach his own witness under that section. That right does not arise upon the mere failure of a witness to give testimony favorable to the party calling him. It must appear, first that the witness has given testimony of a damaging and prejudicial nature to the cause of the party calling him and, second, that the party has been taken by surprise because he had been led to believe that the witness would give testimony favorable to his cause. (*People* v. *Slisovich*, 193 Cal. 544, 554 [226 Pac. 611].) These rules are based upon sound policy, for unless a party's right to impeach his own witness is so restricted, a convenient means would be afforded for the introduction of otherwise inadmissible hearsay testimony. Measured by the foregoing rules, it is apparent that the offered hearsay testimony was properly excluded. The witness had given no testimony which was damaging or prejudicial to the cause of appellant. All that can be said is that he did not give testimony favorable to appellant. Again it was not shown that the witness had led appellant or his counsel to believe that he would give any favorable testimony.

The portions of the interlocutory decree appealed from are affirmed.

Nourse, P. J., and Sturtevant, J., concurred.