## No. 31,346

THE STATE OF KANSAS, ex rel. MAXINE JOHNSON, *Appellee*, v. GUY R. STREVEY, *Appellant.*

(27 P. 2d 253.)

Opinion filed December 9, 1933.

*J. P. Noble,* of Oberlin, for the appellant.

*J. F. Peters, W. S. Langmade* and *Wallace T. Wolfe,* all of Oberlin, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was a prosecution under the statute (R. S. 62-2301 *et seq.*) to compel the defendant as alleged father of the illegitimate child of the relatrix to contribute to its support.

The jury's verdict was that defendant was the father of the child; he was adjudged to pay into court the sum of $15 every three months for its maintenance and education until he shall have paid an aggregate sum of $1,000; and he was also required to give security for such payment, and in default thereof he should be committed to jail

until such security is given, but such imprisonment should not in any event exceed the period of one year.

Defendant appeals, contending first that the trial court erred in overruling his motion to set aside and strike out the complaint under which this bastardy proceeding was begun for the reason that the notary public before whom the complaint was signed and sworn to by the relatrix was her attorney in the case.

The records shows that the complaint was filed with the justice of the peace on March 5, 1932, and a warrant was issued thereon. Defendant was arrested on April 5, 1932, and gave bond to appear on April 12, 1932. On that date defendant appeared in the justice court, and a hearing on the complaint was had pursuant to the statute. The testimony of the mother was reduced to writing and signed and sworn to by her before the justice of the peace and forwarded to the district court with the other papers in the case. Defendant gave the statutory recognizance for his appearance at the next term of the district court.

Thereafter, on October 12, 1932, defendant filed in the district court a motion for a continuance, the grounds therefor being that the cause had not been certified to the district court by the justice until October 10, 1932, in consequence of which he and his counsel were not informed that the cause would be tried at that term, and that a material witness in his behalf was a resident of Nebraska, and that neither her presence at the trial nor her deposition could be procured unless a continuance was granted.

On November 1, 1932, defendant filed an answer to the complaint, denying that he was the father of the child as alleged by the prosecutrix. Not until all these matters had transpired nor until February 27, 1933, did defendant file his motion questioning the sufficiency of the complaint on account of its being sworn to before complainant's attorney.

One of the primary rules of pleading is that all dilatory pleas must be interposed promptly, to the end that the cause be neither stayed nor delayed on account of mere procedural informalities. (Cooley's Blackstone, 3d ed., Book III, 301-303; Phillips on Code Pleading, § 59; 49 C. J. 223 *et seq.*) While bastardy proceedings are conducted under statutory procedure prescribed therefor (*State, ex rel., v. Murphy,* 120 Kan. 350, 243 Pac. 288), that procedure has some aspects of both civil and criminal actions. (*State v. Baker,*

65 Kan. 117, 69 Pac. 170.) In a civil case where verification of a pleading is required to raise an issue, the want of such verification is waived if the adversary pleads over without first directing the court's attention to its technical insufficiency. (*Emery v. Bennett,* 97 Kan. 490, 155 Pac. 1075.) The procedure in bastardy cases is analogous to that of the criminal code, providing, as it does, for a complaint, warrant, arrest, preliminary hearing, recognizance for appearance in the district court, and possible imprisonment to enforce defendant's compliance with the judgment imposed on him. In an ordinary criminal case, it is immaterial that a complaint may have been defective in point of verification when a warrant has been issued thereon and defendant is arrested under its authority and when he gives bail for his appearance pursuant thereto. (*State v. Miller,* 87 Kan. 454, 124 Pac. 361; *State v. Carter,* 122 Kan. 524, 253 Pac. 551.)

From these analogous rules of both civil and criminal procedure, the court holds that defendant's belated motion to set aside and strike out the complaint was properly denied.

The next error urged relates to the admission of testimony given by the father of the relatrix touching conversations he had with defendant relating to the pregnancy of the girl. The argument now is that defendant had a right to negotiate a settlement and that it was error to permit evidence of such negotiations to go to the jury. The abstract gives the substance of several conversations between the girl's father and defendant touching the girl's pregnancy. The father testified that on one occasion he told defendant—

"He should have been over to talk it over with me before . . . He suggested some arrangement could be made to have the girl taken care of. I said I would consider the matter."

On another occasion the father testified:

"I asked him what arrangements we might make in our negotiations regarding my daughter, and he emphatically said that he didn't care to have anything more to do with it."

The father also testified that at a later time—

"He wanted to settle it financially, said his attorneys had suggested that he settle it out of court if possible.

"Defendant objects as incompetent and hearsay.

"Objection overruled.

"He asked me what I wanted on several occasions. I said I would like to have him take the girl and take care of her, as I thought that was the right

way to adjust the matter. He said he didn't want to be a married man. I think he made no other statement regarding marriage at that time.

"Q. Did he say anything further about a financial settlement?

"Defendant objects to any testimony about a settlement as incompetent.

"Objection overruled.

"A. Not at that time. I recall a proposition made a few days ago.

"Q. This is since the case was started? A. It is, a compromise settlement.

"Q. That was made through attorneys? A. Yes, I think it was."

Defendant testified:

"Had two or three conversations with Mr. Johnson, I could say it was three. Occurred about the places where Mr. Johnson said. . . . He [the father] came over to our place and wanted to know what I was going to do about it. I asked him what he wanted me to do and he suggested, or rather said I had to marry his daughter, and I told him I wouldn't do that; I don't remember for sure, I think I asked him if a small financial settlement would satisfy him, and he said that it wouldn't. He said he would have to take it into court, and make it cost me a lot of money.

"Q. What was the object of offering him a small or some financial settlement? A. I offered it to him to keep down scandal, that is all. It was sometime during the latter part of February, 1932."

It will be noted that much of the father's testimony touching negotiations for a nonjudicial settlement was admitted without objection. It will also be observed that defendant did not confine himself to cross-examination of defendant on this testimony of challenged competency, but testified himself more broadly on the same subject. In so doing he cured whatever incompetency may have inhered in the testimony of the father of the relatrix. In *State v. Furney,* 41 Kan. 115, 21 Pac. 213, it was said:

"Where incompetent testimony is given to the jury, such error is cured where the defendants on their own behalf testify substantially to the same facts erroneously admitted in the first instance." (Syl. ¶ 4.)

The familiar rule of law just stated makes it unnecessary to determine whether the father's evidence touching his negotiations with defendant arising from his natural solicitude for his daughter was incompetent under the ordinary rule which excludes evidence of negotiations for nonjudicial settlement of legal controversies. It was not shown that the father was the authorized agent of the relatrix to effect a compromise or settlement with defendant. But see *State, ex rel., v. Williams,* 92 Kan. 527, 150 Pac. 225; *Robb v. Hewitt,* 39 Neb. 217; *Gatzemeyer v. Peterson,* 68 Neb. 832.

The next error argued raises a question as to the sufficiency of the evidence—on the particular point of the period of gestation.

According to the testimony of the relatrix the child was begotten on the night of June 28, 1931, and it was born on March 8, 1932, a period of 254 days. The attending physician testified that the child at birth was of normal development, and that the period of gestation varied normally from 275 to 280 days. However, we must take cognizance of our own precedents on this point, and these have given approval to what has been said in authoritative works on medical jurisprudence which declare that there are many instances of normally developed children born as early as 240 days after insemination. (*State, ex rel., v. Law,* 93 Kan. 357, 144 Pac. 232.)

Error is also assigned on the overruling of defendant's motion for a new trial based in part upon newly discovered evidence, the substance of which was that the relatrix was seen on two occasions under questionable circumstances with two other men during the month of May, 1931. The credence to be attached to that evidence, which was in the form of affidavits, was primarily addressed to the discretion of the trial court. In our view the affidavits could do no more than rouse a suspicion that the relatrix, notwithstanding her youth, had been somewhat promiscuous with her favors. The evidence to support the judgment was sufficient, and indeed it was substantially corroborated in some particulars by defendant's own testimony.

The record contains no error, and the judgment is affirmed.

HUTCHISON, J., not sitting.