No. 37,433

In the Matter of the Estate of Johanna Strachen, Deceased (IRYNE B. JENSEN, *Appellant*, v. CECIL R. REEBLE, *Appellee*).

(204 P. 2d 703)

Opinion filed April 9, 1949.

*Roscoe W. Graves,* of Emporia, argued the cause and was on the briefs for the appellant.

*Everett E. Steerman,* of Emporia, argued the cause, and *Charles N. Sadler* and *Harold Waxman,* of Kansas City, Mo., were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was a proceeding wherein one claiming to be an heir of decedent sought in probate court to have that relationship established. The probate court found that he was not an heir. On appeal the district court found that he was an heir. The acknowledged heir has appealed.

The facts are as follows: Johanna Strachen died intestate leaving no direct heirs. Her estate went to brothers and sisters. One brother John J. Reeble predeceased her. His share of decedent's estate would go under the statute to his children. He left one child, Iryne Jensen, about whom there is no question raised. All parties concede that she is John J. Reeble's legitimate child. Sometime after administration of the estate had begun Cecil R. Reeble filed his petition, in which he alleged that he was the son of John J. Reeble, a brother of the decedent; that John died leaving him and Iryne as his only heirs, and that he was entitled to one-half of the share of Johanna's estate that would have been inherited by his father, if he had outlived her.

Iryne filed an answer denying this. The trial in probate court was on the issue thus raised. The probate court decided that issue in favor of Iryne. Cecil appealed and on the trial in district court the court found he was an heir.

Iryne filed a motion for a new trial on the statutory grounds. This was denied. On appeal to this court she sets out four specifications of error—one, error in entering judgment that Cecil is an heir of Johanna; two, entering judgment that Cecil is the legitimate child of John J. Reeble; three, entering judgment that Cecil is an heir at law of Johanna and the legitimate child of John because it was not sustained by any competent evidence; and four, admitting incompetent and improver evidence.

About many of the facts there was no dispute. John J. Reeble and Bertha Breeding were married in December, 1896. They separated in April, 1897. In May of that year John secured a divorce from Bertha. This decree of divorce was vacated by the district court of Lyon county on May 12, 1897. The young people had been living at Emporia but after this separation Bertha returned to Kansas City and sometime thereafter John went to Nebraska.

At any rate, they both returned to Emporia in the spring of 1898, From here on the evidence is not so direct and positive. However,

there was substantial testimony to sustain the finding of the trial court that "John Jacob Reeble and wife Bertha Reeble lived together and cohabited as husband and wife until the latter part of May, 1898, at which time Bertha Reeble went to live with her mother in Kansas City, Kansas."

Bertha testified also that sometime in April, 1898, she broke her ankle and when the doctor was treating her for that she learned for the first time that she was pregnant. On cross-examination Bertha testified that she had never filed a suit for divorce from John. At that point counsel for Iryne as a part of the cross-examination offered the files of the district court of Lyon county in a case entitled *"Bertha E. Reeble v. John J. Reeble,* No. 9411." The petition was for a divorce on account of nonsupport and was filed January 10, 1898. The voluntary entry of appearance of John was filed on the same date. The journal entry recited the personal appearance of Bertha and granted the divorce on February 1, 1898. The entry on the judge's trial docket was to the same effect and was introduced as part of the redirect examination of Bertha.

Appellee was born to Bertha in Kansas City on November 22, 1898. He never saw John J. Reeble. John furnished Bertha the money to go to Kansas City and sent her money for a while after she went there. He did not go to Kansas City although he had agreed to and after a while they quit writing to each other. After Cecil was born she wrote and told John about it but he never answered her letter. There was other corroborating evidence but the above are the essential facts. This action was tried on the theory that Cecil was claiming to be John's legitimate son, not on the theory that he was an illegitimate son, who had been recognized. The trial court found in his favor on both issues.

At the outset appellant points out that since Cecil was born on November 22, 1898, his birth occurred 295 days after the divorce was granted and 316 days after the suit was filed. She also points out that the normal period of gestation is 280 days.

Appellant recognizes the rule that a child born in lawful wedlock is presumed to be legitimate. She argues, however, that Cecil was not born in wedlock nor within a normal period of gestation thereafter. She argues from those facts that there is no presumption of Cecil's legitimacy.

Bertha testified that John was the father of her child. She is the only person who could so testify. If only one man had inter-

course with her and she had a baby, then that man was the baby's father. In *Nolting v. Holt,* 113 Kan. 495, 215 Pac. 281, we said:

"Its mother knows who the father was. Her evidence is the best evidence, and justice to the child requires that she be a competent witness to its paternity." (p. 496.)

See, also, *Lynch v. Rosenberger,* 121 Kan. 601, 249 Pac. 682. If the trial court believed the testimony of Bertha that settled the issue of whether Cecil was John's son. On the issue of legitimacy, however, we must look further.

Appellant argues that we should consider the evidence and the unusual length of time that elapsed either after the divorce action was begun January 10, 1898, or after the divorce was granted February 1, 1898, and November 22, 1898, when appellee was born, and hold that on account of the unusual length of that period the judgment of the trial court that appellee, the legitimate son of John J. Reeble, was not supported by any competent evidence.

At the outset there is sound authority to the effect that a child born after parents have been divorced will be presumed to be legitimate where conception took place before the divorce decree was entered. The rule is stated in *Haugen v. Swanson,* 219 Minn. 123, 16 N. W. 2d 900, as follows:

". . . Presumption of legitimacy of child conceived during period in which husband and wife were occupying same dwelling house and were alone except for presence of minor children is conclusive, notwithstanding divorce proceedings are pending."

Also note *Boyers v. Boyers,* 283 Ky. 1, 140 S. W. 2d 626, where the court held:

"The separation or divorce of husband and wife before the birth of a child begotten during wedlock does not destroy the presumption of its legitimacy, but reason warrants lessening of the presumption according to the relations of the parties and all the circumstances."

The language further in a discussion of the point is so clearly in point here that we quote further:

"But throughout this development to the present day, the interests of society, expressed as public policy, the presumptions of virtuous conduct on the part of a wife, and the protection of an innocent child from the cloud of bastardy, demand perhaps the strongest sort of evidence required in the establishment of any legal right in order to overcome the presumption that a married man is the father of a child begotten or born to his wife during wedlock. The force of this rule is so positive that it is generally held by the courts that the testimony of neither the husband nor the wife is competent to prove illegitimacy of a child born in wedlock, particularly if access within a possible period of

gestation be shown. 7 C. J. 944; Annotations, 60 A. L. R. 380; 68 A. L. R. 421; 89 A. L. R. 911; *Goss v. Froman,* 89 Ky. 318, 12 S. W. 387, 8 L. R. A. 102; *Veron's Adm'r v. Veron,* 228 Ky. 56, 14 S. W. (2d) 185. This reference is made not as a decision in this case, for the parties waived any incompetency of such evidence, but to emphasize the policy of the law and the burden that the husband must carry to disprove paternity. The separation or divorce of the husband and wife prior to the birth of a child does not destroy the presumption of its legitimacy if it was begotten before the divorce. 7 Am. Jur., 'Bastards,' Section 19; 7 C. J. 942. However, reason warrants a lessening of the presumption according to the relations of the parties and all the circumstances." (p. 4.)

See, also, *Jackson v. Jackson,* 182 Okla. 74, 76 P. 2d 1062.

As to the question of whether conception took place before or after February 1, appellant asks us to hold that it could not have taken place before that date on account of the lapse of time therefrom, 295 days or 15 days more than the normal period. We passed on an analogous question in *State, ex rel., v. Law,* 93 Kan. 357, 144 Pac. 232. There the question was legitimacy of an infant born two hundred and seventeen days after the mother testified defendant came to her home and had intercourse with her. The argument was made that on account of the shortness of time it would have been impossible for conception to have taken place when the mother said it did. We did not agree with this argument and approved what was said in 3 Wharton and Stilles' Medical Jurisprudence to the effect that while the average period of gestation is 275 days there are many variations and the period has been known to be protracted to 344 days. We also quoted Williams on Obstetrics to the effect that it had been known to be as long as 329 days. We cited this opinion with approval in *State, ex rel., v. Strevey,* 138 Kan. 646, 27 P. 2d 253. That case was one where the child was born a shorter time than normal after conception. See, also, 2 Taylor's Principles and Practice of Medical Jurisprudence, 8th ed., p. 54, Gonzales, Vance, Helpern Legal Medicine and Toxicology, p. 312, and Glaister, Medical Jurisprudence and Toxicology, 8th ed., p. 334.

Courts as a rule avoid wherever reasonably possible holding a child to be illegitimate. To so hold here would require us to say as a matter of law that on account of the time that had elapsed there was a presumption that conception took place after February 1. We will not do that.

The judgment of the trial court is affirmed.