No. 41,155

In the Matter of the Estate of Harry D. Julian, Deceased. (STANLEY JULIAN, WAVIE BEAN, ARNOLD T. JULIAN, JANIE BUSH, WILMA JULIAN, ALICE MARIE BARKER, VIRGINIA BARSTOW and MILTON E. JULIAN, *Appellants*, v. SHIRLEY PATRICIA JULIAN ERICKSON, *Appellee.*)

(334 P. 2d 432)

Opinion filed January 24, 1959.

*Robert R. Hasty*, of Wichita, argued the cause and was on the briefs for the appellants.

*Carl L. Buck*, of Wichita, argued the cause, and *Ralph E. Gilchrist* and *Robert E. Lee Walker*, both of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This appeal arises out of a dispute as to who are the heirs-at-law of Harry D. Julian, an intestate decedent.

From a judgment in favor of one found to be his daughter, his brothers and sisters and a niece have appealed.

The relevant facts and background of the matter are simple and can be stated briefly:

The story begins back on November 1, 1927, on which date Harry D. Julian (hereafter referred to as Harry) and Frances Letha Mustoe (hereafter referred to as Frances), residents of Wichita, were married. They lived together as husband and wife for twenty-three days, and on November 29, 1927, Frances filed suit for divorce in the district court of Sedgwick county charging Harry with extreme cruelty. He filed an answer in the form of a general denial.

On February 7, 1928, Frances filed an amended petition charging extreme cruelty and containing this allegation:

"Plaintiff further alleges and says that she expects to become a mother in the month of June or July, and the defendant is the father thereof."

The prayer sought a decree of divorce, alimony, attorney fees and costs.

On February 10, 1928, Harry filed an answer (in the form of a general denial) and cross-petition in which he sought a decree of divorce on the ground of gross neglect of duty, and further charged:

"Defendant states that plaintiff, at the time of her marriage to him as aforesaid, was pregnant by another than this defendant, and defendant avers that he was ignorant of plaintiff's unchastity, and of her condition as aforesaid at the time of his said marriage to her."

Frances filed a reply denying allegations of fault on her part, including the above-quoted allegation as to her pregnancy by another man.

Upon the issues thus joined the case came on for trial on March 19, 1928, with both parties present in court and by counsel. Evidence was introduced by both sides and the matter taken under advisement. The journal entry of judgment recites in part:

"On the 26th day of March 1928, the case was opened up and further evidence introduced by the respective parties, and the case taken under further advisement by the court. And again on the 28th day of March 1928, by the court's order the case was further opened up and additional evidence introduced. And on the 29th day of March 1928, the court being fully informed finds for the plaintiff generally and against the defendant. And all parties signifying their acquiescence in the judgment of the court:"

Accordingly, judgment was rendered granting a divorce to Frances and awarding her alimony, attorney fees and costs.

No appeal was taken from the judgment and it became final.

The decree made no mention of Frances' unborn child and contained no provision for its support—in other words, the decree was silent on the matter.

On July 12, 1928, Frances gave birth to her child, a girl, who was given the name Shirley Patricia Julian (hereafter referred to as Shirley). A birth certificate, filed July 25, 1928, listed her father as Harry David Julian and her mother's maiden name as Frances Letha Mustoe.

It does not appear that through the years Harry contributed to the support of Shirley or that any proceedings were instituted to compel him to do so. In the meantime Harry married again. That marriage also ended in divorce. No children were born of that marriage.

On January 14, 1957, Harry died intestate.

On the following day his brother, Stanley Julian, filed a petition for the appointment of an administrator, alleging that Harry's heirs-at-law consisted of two brothers, three sisters, one half-brother, one half-sister and one niece, being those persons whose names appear as appellants in this appeal and who, for convenience, will hereafter be referred to as petitioners.

Shortly thereafter Shirley filed a petition for the appointment of an administrator, alleging that she was the daughter of Harry and his only heir-at-law.

By appropriate pleadings, issues were joined between the parties, and, after a full hearing, the probate court found that Shirley was the daughter of Harry, allowed her petition, denied that of petitioners, and appointed Shirley's designee as administrator of Harry's estate.

From these adverse rulings petitioners appealed to the district court in which a trial *de novo* was had. The court had before it the files and transcript of the evidence of the 1928 divorce case between Frances and Harry, and, in addition, heard oral testimony.

Stanley (brother of Harry and one of the petitioners) testified that through the years he had been familiar with Harry's personal affairs; that he never knew of Harry having any children, and that his surviving heirs-at-law were the eight persons heretofore referred to as petitioners.

Frances (mother of Shirley) identified herself as the former wife of Harry and from whom she was granted a divorce in March, 1928; testified that Shirley was born on July 12, 1928, as the result of that marriage; that Harry had visited her and Shirley in her (Frances') home in Omaha, Nebraska, in September, 1955, on which occasion she introduced him to Shirley's husband (Paul Erickson), and that after exchanging greetings Harry and Shirley embraced.

Shirley testified that through school she had gone by the name of Shirley Patricia Julian; that Frances was her mother; that Harry had visited them in Omaha in September, 1955, and that they had gone out to dinner together.

Shirley's husband, Paul Erickson, testified that he and Shirley were married on October 19, 1954; that they lived in Omaha; that in September, 1955, he first met Harry at the home of his mother-in-law (Frances), at which time Frances introduced him to Harry as "your new son-in-law"; that Shirley said "Hello Dad" to Harry, following which she and Harry embraced.

Lewis E. Timmerman, Shirley's designee as administrator, and who had been appointed as such, testified that in going through some of Harry's personal effects he found a photograph of Shirley taken when she was about fourteen years of age, a Christmas card from her to him (no date shown), a receipt showing that Harry had stayed at a named motel in Omaha in September, 1955, and a slip of paper in Harry's handwriting with Shirley's name and Omaha address on it, and another slip of paper giving directions to get to Frances' Omaha address.

At the conclusion of the trial the court made findings of fact and rendered conclusions of law which, for our purposes, need not be discussed in detail other than to state that Shirley was found and adjudged to be the daughter of Harry, born as the result of his marriage to Frances; that as such she was his sole surviving heir-at-law and entitled to inherit his estate, and the ruling of the probate court was in all respects affirmed.

Petitioners' contentions in this court are somewhat confusing, but, in the main, appear to be based upon the proposition that because the 1928 divorce decree was silent as to the paternity of Frances' unborn child the decree is to be construed as a judgment finding that Harry was not the father—therefore, some twenty-nine years later, the child (Shirley) is estopped by *res adjudicata,*

acquiescence in that judgment, and laches, from raising the issue of parentage.

We believe petitioners are in error in so contending.

It is to be remembered that the pleadings in the divorce action specifically put in issue the paternity of the unborn child. It is conceded that most of the evidence in the trial of that case, which lasted several days, had to do with the question. It is quite true that the decree was silent concerning the child—but it did contain the statement that the court "finds for the plaintiff generally and against the defendant."

The rule is well established that a general finding made by a trial court determines every controverted question of fact in support of which evidence has been introduced, and that a general finding raises a presumption that the trial court found all facts necessary to sustain and support the judgment. (*Stafford v. Stafford,* 163 Kan. 162, 181 P. 2d 491 [syl. 5]; *Dryden v. Rogers,* 181 Kan. 154, 157, 309 P. 2d 409; *Manville v. Gronniger,* 182 Kan. 572, 322 P. 2d 789; *B & S Enterprises v. Rudd,* 182 Kan. 710, 717, 324 P. 2d 515.)

The question of paternity of the unborn child being raised by the pleadings, and much evidence on the matter being introduced, the general finding by the trial court in the divorce case is, absent proof to the contrary, subject to but one construction—that Harry was found to be the father.

And so, if the divorce decree be considered as *res adjudicata* on the subject it would operate as an estoppel as to petitioners rather than as to Shirley.

In addition, the rule is that a child born after parents have been divorced will be presumed to be legitimate where conception took place before the divorce decree was entered. (*Jensen v. Reeble,* 167 Kan. 1, 4, 204 P. 2d 703.) Such was the case here. Furthermore, Shirley was born 255 days from the date of marriage of Harry and Frances. Such length of time is within the recognized period of gestation. (*The State, ex rel., v. Law,* 93 Kan. 357, 360, 144 Pac. 232; *State, ex rel., v. Strevey,* 138 Kan. 646, 650, 27 P. 2d 253; *Jensen v. Reeble,* supra, p. 5, and *In re Estate of Walton,* 183 Kan. 238, 245, 326 P. 2d 264.) Assuming, as contended by petitioners, that the evidence in the divorce case established that conception occurred on or about October 1, 1927, the presumption of legitimacy, under the facts before us, nevertheless attaches. Further, Frances testified that Shirley was born as the result of her marriage to Harry.

(*Nolting v. Holt,* 113 Kan. 495, 496, 215 Pac. 281, 31 A. L. R., 1117; *Jensen v. Reeble,* supra, pp. 3 and 4.)

An examination of this record convinces us that the trial court's findings are abundantly supported by the evidence—in fact, we find no evidence to the contrary. All contentions made by petitioners have been considered but are found to be without substantial merit. We find no error in the record and the judgment is affirmed.