JD, Plaintiff-Respondent,

v.

MD, Defendant-Appellant.

No. 8945.

Springfield Court of Appeals,
Missouri.

April 6, 1970.

Motion for Rehearing or to Transfer to the
Supreme Court Denied April 23, 1970.

Keith V. Williams, Springfield, for plaintiff-respondent. ·

Turner White, III, White & Dickey, Springfield, for defendant-appellant.

TITUS, Presiding Judge.

■ The parties were divorced January 13, 1967, and 219 days later on August 20, 1967, a daughter was born to the plaintiff who thereafter filed a motion to modify the decree to include an allowance for maintenance of the child. Rules 88.03 and 88.07; §§ 452.070 and 452.110.[1] The sole question on appeal is whether the evidence is sufficient to support that portion of the trial court's decree adjudging defendant to be the father of the child, a fact he disavows. As iterated multitudinously, our duty is to effect a de novo review of the record upon both the law and evidence to determine what the decree of the trial court should have been, subject to the injunction that the "judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."[2]

■ Courts may not feign ignorance of matters known by the general public and every back-fence twaddler. Elder v. Delcour, 364 Mo. (banc) 835, 838, 269 S.W.2d 17, 19(2), 47 A.L.R.2d 370, 372(2). Ergo, we may judicially note that the normal period of human gestation is 280 days or ten lunar months[3] and from there calculate that the child in question was begot during wedlock. All of which brings us to the curial commandment that a child conceived in marriage is presumed to be legitimate, notwithstanding it was born after termination of the bonds of matrimony.[4] Defendant states in his brief that this presumption did not shift the burden of proof from the plaintiff [Clapper v. Lakin, 343 Mo. 710, 723(2), 123 S.W.2d 27, 33(4)], that the presumption is rebuttable

1. References to statutes and rules are to RSMo 1959, V.A.M.S., and to Missouri Supreme Court Rules of Civil Procedure, V.A.M.R.

2 Rule 73.01(d); § 510.310, subd. 4; T. v. T., Mo.App., 447 S.W.2d 795, 796 (1, 2); Burger v. Wood, Mo.App., 446 S.W.2d 436, 441–442(4); Chilcutt v. Baker, Mo.App., 384 S.W.2d 854, 860 (9).

3. F—— v. F——, Mo.App., 333 S.W.2d 320, 327; Caspermeyer v. Florsheim Shoe Store Co., Mo.App. 313 S.W.2d 198, 207 (7); Boudinier v. Boudinier, 240 Mo. App. 278, 294(6), 203 S.W.2d 89, 98(6).

4. §§ 452.010 and 474.080; Rasco v. Rasco, Mo.App., 447 S.W.2d 10, 16; Schieren-

beck v. Minor, 148 Colo. (banc) 582, 367 P.2d 333, 334(1); In re Julian's Estate, 184 Kan. 94, 334 P.2d 432, 436(3); Koch v. Miller, Ohio Prob., 87 Ohio Law Abst. 47, 178 N.E.2d 186, 187(3); State v. Bowman, 230 N.C. 203, 52 S.E.2d 345(1); Buzzell v. Buzzell, Me., 235 A.2d 828, 832(12); Kuhns v. Olson, 258 Iowa 1274, 141 N.W.2d 925, 927(7); Wechsler v. Mroczkowski, 351 Mich. 483, 88 N.W.2d 394, 396(1); Balance v. Balance, 261 Ala. 97, 72 So.2d 851, 852(1); In re Lewis' Estate, 207 Wis. 155, 240 N.W. 818, 819(1); 10 C.J.S. Bastards § 3 c., at p. 25; 10 Am.Jur.2d, Bastards, § 15, p. 855.

[Underwood v. Underwood, Mo.App., 399 S.W.2d 635, 637(2)], and "dropped from the case when defendant offered substantial evidence contradicting paternity." He also urges that unaided by the presumption, the evidence was not sufficient to support the judgment because plaintiff's "admitted perjury * * * deprived her testimony of credibility" and her "testimony in the divorce action, which contradicted her testimony on the motion to modify, was substantial proof that defendant was not the father of her post-divorce born child."

When a rebuttable presumption arises, the person against whom the presumption operates is confronted with a rule of law which casts upon him the burden of producing substantial evidence to controvert the presumed fact [Terminal Warehouses of St. Joseph, Inc. v. Reiners, Mo., 371 S.W.2d 311, 316(4)], and upon the introduction of such substantial evidence, the existence or nonexistence of the fact once presumed is to be determined from the evidence as if no presumption had ever been operative in the case. In other words, if defendant had produced substantial evidence that he was not the father of the child, then the presumption would have vanished from the case (but not the evidence which gave rise to the presumption or that contrary thereto) and the question of whether defendant was the father vel non would be determined from the evidence offered by both parties.[5]

The term "substantial evidence" alludes to the quantum of the evidence required to overcome the presumption. As the presumption was concocted and is invoked to protect the innocent child from bastardy, it is said that in order to qualify as being "substantial" the evidence must amount to clear, convincing and satisfactory proof that no copulation occurred or was possible between the husband and wife during the conception period or must equate to proof so strong and persuasive as to leave no reasonable room for doubt. Other comments on the quantum of the evidence needed to overcome the presumption are collected in Simpson v. Blackburn, Mo.App., 414 S.W.2d 795, 801 and 10 Am. Jur.2d, Bastards, § 19, pp. 858–859. Under Lord Mansfield's rule neither the husband nor the wife may testify to nonaccess between them when the legitimacy of a child born or conceived in wedlock is in issue.[6] We are not confronted with the task of determining whether this rule is the law in Missouri. But assuming, though not deciding, defendant's testimony regarding nonaccess may have been subject to objection for this reason, we do not necessarily consider it shorn of all probative value as no complaint thereto was made by the plaintiff. Cf. Conlon v. Roeder, Mo., 418 S.W.2d 152, 159(5).

Because defendant was in the military service when the parties were married, they never lived "together in the same established home." A child (not the one in dispute) was born of the marriage and when defendant left the service in June 1965 he and the plaintiff stayed at her parents' home "for two or three days." It was then, according to plaintiff, that defendant advised her "he did not want the responsibility of being married and having a home;" according to defendant, it was then that "it came up that I wanted a divorce." Defendant left to reside with his parents and subsequently "lived in several apartments around town." Plaintiff testfied "this [separation] did not exclude any sexual relationships however," that she continued "to see or visit" defendant "three or four times a month" and that they had intercourse on most of these occasions. This visiting and coition,

---

5. Duff v. St. Louis Mining & Milling Corp., 363 Mo. (banc) 944, 948(1), 255 S.W.2d 792, 793–794(1) ; State v. Brown, Mo. App., 446 S.W.2d 498, 500(4) ; Campbell v. Fry, Mo.App., 439 S.W.2d 545, 548(1).

6. See annotations in 60 A.L.R. 380–393, 68 A.L.R. 421, 89 A.L.R. 911–913, and 4 A.L.R.2d 567–572; VII Wigmore on Evidence, 3d ed, § 2063, pp. 358–368; 10 Am.Jur.2d, Bastards, § 33, pp. 869–870.

plaintiff related, continued into January 1967, the month the divorce decree was entered. Plaintiff moved into a house across the street from her parents' home in August 1966 and she stated that defendant visited her there "between ten and fourteen times" in September and October 1966 and "five or six times" in November and December 1966 and that they had intercourse most every time. "[D]uring the month of November, 1966, or December, 1966," plaintiff's brother-in-law observed defendant's automobile parked near plaintiff's house on "approximately three occasions;" her mother saw the car there once and at another time observed the defendant's coat and shoes "in the front room" when she went to the house at 9 p. m. to see her daughter. The "child was conceived some time around the middle of November of 1966." The petition for divorce was filed November 14, 1966, and plaintiff said it was "late November or early December [1966] when we found out that I was pregnant." By plaintiff's account, defendant acknowledged to her that he was the father of the child when informed of the situation but "said he was having strained relations with his family at that time," urged her "to go ahead with the divorce," asked her not to tell her parents or counsel about the pregnancy, and assured her that "within a month or so [after the divorce] we would be remarried." When defendant was reminded of this last subject "during the summer of 1967," plaintiff recalled that defendant told her "he didn't want to be remarried. * * He said that he did not want to pay child support for the child but he would be willing to pay the hospitalization, but he did not want to pay the child support, and if I tried to get it that he wouldn't pay it [and] that he would take away the name from the child." Although plaintiff agreed that defendant had frequently lied to her, she stated "I wanted to believe [what he said about remarriage] so I

guess what you want to believe you do believe." [7]

Blood tests of the parties and the child were received into evidence as showing the possibility of defendant being the father was not excluded. Plaintiff vowed she had not had intercourse with anyone other than defendant during the times in question. Defendant did not directly suggest plaintiff had been intimate with another, but did testify that he did not have intercourse with the plaintiff after June 1965 and denied he had fathered the child born to plaintiff subsequent to the divorce. Likewise, defendant denied he had ever acknowledged parenthood or had promised to rewed the plaintiff. Defendant admitted having seen the plaintiff after July 1965 and having "been in that house" where plaintiff resided across the street from the home of her parents. He said the only purpose for these visits was to deliver support payments for the first child. Defendant agreed he had knowledge that plaintiff was pregnant before the divorce was granted and had indicated to plaintiff "I would give her some financial assistance" towards defraying the expenses attending the birth of the second child, but asseverates this offer should not be interpolated into an admission of his paternity.

Although defendant did not literally contest the divorce, he and his attorney appeared at the hearing and admitted to the court that plaintiff possessed good character. Plaintiff's verified petition for divorce alleged the parties had separated in June 1965, that defendant had abandoned plaintiff and their child for a period in excess of one year and that defendant had become cold and lost all love and affection for her. At the divorce hearing plaintiff anwered "Yes" to the conclusional inquiries of her counsel if the petition averments were correct and testified she had not "been with the defendant

---

7. "Women love the lie that saves their pride but never an unflattering truth." Gertrude Franklin Atherton.

at all since June of 1965." Plaintiff conceded at the trial on the motion to modify that she had testified in the divorce case as indicated and defendant's counsel elicited from her the explanation that she had selected June 1965 as the date of separation because that was when the defendant moved to the home of his parents. She stated that the defendant's abandonment of her was "[f]inancially only" and when asked if it was true that defendant had become cold and lost all love and affection for her prior to the divorce, plaintiff responded "Emotionally, yes; physically, no." Plaintiff admitted her prior testimony that she had not "been with" defendant after June 1965 referred to sexual intercourse and that the statement was untrue. She didn't know and couldn't remember if that statement was "deliberately inaccurate * * * I don't know why I said that unless it would indicate at some time when I was trying to get a divorce that it would be stopped. * * * I did not [want a divorce]. This is the way [defendant] wanted to do it, I wanted to do it as he wanted to do it to make it simpler because it was a very difficult situation."

It is not disputed that defendant was present in the vicinity during the entire period in which the child must have been begotten and had been in plaintiff's physical presence on occasion. This attests to the possibility and opportunity for intercourse. No suggestion is made that defendant lacked the power of procreation and there is no evidence that plaintiff had adulterous relations at the time the child was conceived. Therefore, if the evidence, in order to overthrow the presumption, must show conclusively that defendant by reason of absence or otherwise could not have had relations with the plaintiff at the beginning of any reasonable period of gestation (Rasco v. Rasco, supra, 447 S.W. 2d at 16), we seriously doubt that defendant's mere denial of paternity and denial that he had intercourse with plaintiff would qualify as substantial evidence to overcome the presumption. Neff v. Johnson, Tex.Civ.App., 391 S.W.2d 760, 763 (6). Defendant, however, does not rest his case solely upon his denial testimony but argues that his denials coupled with plaintiff's admission against interest, i. e., her testimony in the divorce case that she had not "been with" defendant since June 1965, constituted substantial evidence to overcome the presumption of legitimacy. In the ordinary case, if there be such, evidence of a party's prior inconsistent testimony may serve both as substantive evidence [Pulitzer v. Chapman, 337 Mo. (banc) 298, 318(3), 85 S.W.2d 400, 410–411(5)] and impeaching evidence, that is, evidence designed to persuade the trier of the fact as to the truth of plaintiff's prior recitations and also as evidence intended to discredit the party as a witness. Zimmerman v. Superior Court, 98 Ariz. (banc) 85, 402 P.2d 212, 215(4–6), 18 A.L.R.3d 909, 915–916(5–8). Assuming that plaintiff's prior inconsistent testimony constituted substantive evidence or even composed the preponderance of the substantive evidence [Stone v. Stone, Wash., 458 P.2d 183, 184(2)], the question still remains whether such substantive evidence also attained the status of substantial evidence sufficient to overcome the strongest presumption known to law. Watts v. Watts, Mo.App., 325 S.W.2d 40, 42; Neff v. Johnson, supra. Be that as it may, even if it could be properly said, which we doubt, that the presumption of legitimacy disappeared from this case, the proof which originally gave rise to the presumption, together with all the other evidence adduced, remained for consideration by the trier of the facts and was, in our opinion, sufficient to justify the judgment which was rendered.

The undertakings by plaintiff to explain the conflicts between her testimony at the divorce hearing and that given on the motion to modify, cast the matter into a situation different from that presented in Steele v. Kansas City Southern Ry. Co., 265 Mo. 97, 117, 175 S.W. 177,

182, where "no explanation or excuse for the variance" was presented. Plaintiff's explanations may seem unsatisfactory when viewed through the myopic vision of her adversary but they nonetheless remain in the case for consideration by the unbiased fact trier. Pfefer v. Bachman, Mo. App., 386 S.W.2d 680 683(3). Plaintiff candidly admitted the divorce hearing testimony that she had not "been with" defendant was inaccurate and untrue. We question if frankness alone fully atones for misstating the truth or if the force of circumstances narrated by plaintiff ever justifies false swearing. Nevertheless, "And, notwithstanding the falsity * * * of the above noted averment in plaintiff's [divorce] petition and her positive statement on the witness stand [in the divorce trial], the trier of the facts was not, for that reason, required to reject and disregard plaintiff's testimony in its entirety. The credibility of the parties was for the sagacious trial judge, wise in the ways of witnesses * * *, and credibility was 'not to be determined by the application of a single standard—that of knowingly and willfully swearing falsely.'" Reeves v. Reeves, Mo.App., 399 S.W.2d 641, 647 (9–10). Also, even though plaintiff's prior statements in the divorce proceeding, served to impeach her credibility as a witness, it did not destroy the prima facie probative effect of the contrary testimony she gave at the hearing on the motion to modify. Miller v. Multiplex Faucet Company, Mo., 315 S.W.2d 224, 227(1).

█ The state is an interested party in all divorce cases [State ex rel. Chandler v. Scott, Mo.App., 427 S.W.2d 759, 762 (3)] and the public's interest must be guarded in such actions. Rogers v. Rogers, Mo.App., 399 S.W.2d 606, 611(6). For these reasons, as well as others, we do not lightly view defendant's charge of perjury or ignore cited authority that an appellate court is not bound to defer to a trial court's findings on credibility when false swearing permeates the postulations

of a party. On the other hand, it does not appear that defendant accorded justice the full candor due it; he admitted and represented to the divorce court that plaintiff was a person of good character and now, by denying his paternity, assumes an inconsistent stand by implying, at least, that the child was conceived in adultery. This is not to say that defendant's foibles serve to expunge plaintiff's failings. It simply serves to suggest that defendant's credibility need not be accepted without question.

If we comprehend defendant's argument aright, he does not say that plaintiff's evidence, if true, was not sufficient to sustain the judgment—rather his argument is that plaintiff's evidence is not worthy of belief for the reasons heretofore stated. The crux of evaluating plaintiff's testimony is whether she told the truth when she said she had intercourse with the defendant, and no other, during the period of conception and we must assume that the trial court believed plaintiff's evidence because it found in her favor. Snip v. City of Lamar, 239 Mo.App. 824, 837(12), 201 S.W.2d 790, 798(12). In assessing the credibility of witnesses, a trial court has a unique exposure to the nuances inherent in oral testimony which we cannot sense from reading written words. The trial judge in this instance could better evaluate plaintiff's frankness in acknowledging her previous testimony and weigh plaintiff's reactions to the searching cross-examination on the subject. A written transcript may do no more than bring conflicting testimony into equilibrium, whereas the peal of truth or the ring of falsity in spoken evidence may serve as the weight which tips the scales towards belief or doubt. Appellate courts for these reasons most often defer to the apparent findings of the trial judge in matters where credibility is involved; it is for these reasons that we now do likewise to affirm the judgment.

It is so ordered.

STONE and HOGAN, JJ., concur.